William Craig MILLIS, William C. Spaller, Steve Acers, and William L. Peebles, Plaintiffs-Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF LARIMER COUNTY, Colorado, and High Drive Water District, a public corporation, Defendants-Appellees,

and

State of Colorado, Intervenor.

No. 79SA338.

Supreme Court of Colorado.

March 30, 1981.

Rehearing Denied April 20, 1981.

Joseph P. Jenkins, P. C., Estes Park, for plaintiffs-appellants.

Roger E. Clark, Loveland, for defendants-appellees.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Deanna E. Hickman, Asst. Atty. Gen., Denver, for intervenor.

LOHR, Justice.

The appellants are nonresidents of Colorado who own vacation property in the High Drive Water District (District) near Estes Park.[1] On August 13, 1975, the Larimer County Board of County Commissioners (Board) adopted a formal resolution approving the modified service plan submitted by the District to provide domestic water for district residents. The appellants filed suit against the Board and the District, seeking relief under C.R.C.P. 106(a)(4) on the basis that the Board's approval exceeded its jurisdiction and was an abuse of discretion. The appellants also sought judgment that the statutory provisions excluding out-of-state landowners from voting on matters concerning the formation and operation of the District are unconstitutional both facially and as applied. The appellants suffered an adverse judgment in

---

1. Although the record reflects that only three of the four appellants are nonresidents, for simplicity we refer uniformly to "the appellants" in speaking of claims by the nonresidents only, as well as in describing claims common to all four appellants.

the trial court and brought this appeal. We affirm that judgment.

The factual findings in the trial court's judgment are limited, so we also rely on uncontroverted statements in the pleadings, the transcript of the proceedings before the Board, and the briefs to provide a more complete background for an understanding of this case. The District consists of approximately 120 to 130 residences or parcels eligible for service, only 9 of which are owned by persons who utilize their property year-around. The majority of the parcels are owned by persons who, like the appellants, live out of state. Pursuant to sections 32–4–104 to 107, C.R.S.1973, the District was organized in 1974. The petition for organization carried by a vote of 27 to 21. The appellants were not eligible to vote because the statutory provisions for special district elections do not extend the franchise to landowners who are not Colorado residents. The district court then entered a decree creating the District.

The District's board of directors proposed to issue general obligation bonds in the amount of $350,000 to finance the construction and installation of a water system. Pursuant to section 32–4–124, C.R.S.1973, the question of issuing the bonds was submitted to the qualified voters of the District, and the measure passed. The appellants again were ineligible to vote.

As part of the procedure for formation of the District, a service plan projecting the sale of bonds totaling $350,000 and bearing interest at 7% per annum had been submitted to and approved by the Board. Subsequent to the organization of the District, bond market rates rose. It appeared that the bonds could not be sold at a 7% interest rate and, upon recommendation of the underwriter of the proposed bond issue, the District's board of directors proposed a modified service plan raising the authorized interest on the bonds to 9%. Pursuant to section 32–1–209(3), C.R.S.1973, the District submitted the modified service plan to the Board for approval.[2] A public hearing was held on that plan, after which the Board approved it.

The appellants then filed a complaint in the Larimer County district court, claiming principally that the modified service plan was economically unfeasible and seeking a judgment: (1) that the Board's approval of the plan was an abuse of discretion and in excess of the Board's jurisdiction, (2) setting aside the Board's resolution approving the modified service plan, and (3) prohibiting the Board and the District from proceeding further in the district court action pursuant to which the District had been formed. Named as defendants were the Board and the District. Both defendants filed motions to dismiss on grounds that the complaint failed to state a claim upon which relief could be granted and that the district court was without jurisdiction to decide the matter. After a hearing, the district court concluded that it lacked jurisdiction to resolve claims relating to the formation of the District,[3] and granted the defendants' motions to dismiss such claims. The court granted leave to the appellants to file an amended complaint. They did so,[4] essentially restating their previous claims and adding a claim for declaratory relief based upon a constitutional challenge to the statutory voting scheme for special district formation and operation.[5]

---

2. Although the original service plan was based on the sale of bonds bearing an interest rate of 7% per annum, the bond issue approved by the voters called for a maximum net effective interest rate of 9%. The District, therefore, did not contemplate having to seek voter approval again for the sale of bonds to finance the modified service plan unless a further rise in the bond market rates should require that the District's bonds be sold at a rate in excess of 9%.

3. *See* section 32–4–107(8), C.R.S.1973.

4. The amended complaint also added as party defendants Robert E. Moore, the Larimer County Treasurer; and Richard M. Green, the Larimer County Assessor.

5. The amended complaint initially asserted only federal constitutional infirmities under the due process, privileges and immunities and equal protection clauses of the Fourteenth Amendment. A subsequent amendment added Article II, § 25 of the Colorado Constitution as a basis for challenge.

All the defendants again filed motions to dismiss. The district court granted the motions with respect to those claims challenging the original organization of the District as well as the claims challenging the facial unconstitutionality of the statutory provisions for organization of special districts. Allegations concerning the invalidity of the Board's approval of the modified service plan and constitutional questions raised by that approval were allowed to stand. The defendants then filed their answer to these remaining allegations.

During the pendency of this case in Larimer County district court, two of the appellants had filed an action against the same defendants in the United States District Court for the District of Colorado, raising essentially the same federal constitutional claims made in the amended complaint. The federal district court ruled in favor of the defendants and dismissed the action. *Millis v. High Drive Water District*, No. 75–M–1021 (D.Colo. Jan. 18, 1978). On appeal, the United States Supreme Court affirmed that decision without opinion. *Millis v. High Drive Water District*, 439 U.S. 802, 99 S.Ct. 58, 58 L.Ed.2d 95 (1978).

The Larimer County district court had postponed final judgment in this action until the appellants completed their appeal to the United States Supreme Court. After the decision of that court was announced, the Larimer County district court heard additional argument and entered judgment dismissing the amended complaint. As part of that judgment the court found that the Board's approval of the modified service plan was supported by the evidence. From that judgment the appellants took this appeal.

### I.

The appellants' constitutional challenge is based upon the statutory denial of the franchise in district elections to those persons who own property within a district but reside out of state. For purposes of water and sanitation district matters, section 32–4–102, C.R.S.1973, refers to section 32–1–101, C.R.S.1973,[6] for the definition of "elector" and "taxpaying elector". That latter section provides in pertinent part:

"(1)(a) 'Elector' of a district means a person:

(I) Who, at the designated time or event, is qualified to vote in general elections in this state;

(II) Who has been a resident of the district or the area to be included in the district for not less than thirty-two days; or

(III) Who, or whose spouse, owns taxable real or personal property within the district or the area to be included in the district, whether said person resides within the district or not.

(b) 'Taxpaying elector' of a district means an elector of a district who, or whose spouse, owns taxable real or personal property within the district or the area to be included in the district, whether said person resides within the district or not."

The appellants contend that excluding out-of-state property owners from voting in district matters,[7] while granting that right to Colorado residents who own property

---

**6.** The statutory provisions cited herein are those which were in effect at the time of the relevant events in this case. The definition of "elector" is now referenced by section 32–4–102(2.5), C.R.S.1973 (1980 Supp.), to section 32 1–802, C.R.S.1973. The definition of "taxpaying elector" is now found at section 32–4–102(5)(a), C.R.S.1973 (1980 Supp.). These changes were effected in 1977 by Colo.Sess. Laws 1977, ch. 427 at 1488.

**7.** Only taxpaying electors can petition for the formation of a water district. Section 32-4–104(1), C.R.S.1973. Voters casting ballots for or against the formation of the district must be electors. Sections 32–4·107(3), 32–1–804(1), C.R.S.1973. Participation in an election on the question of incurring bonded indebtedness to finance the water district is also limited to electors. Section 32–4–124, C.R.S.1973 (referring to part 8 of article 1 of title 32, C.R.S. 1973). Only electors may participate in the nomination and election of directors of a district. Section 32–4–112(1), C.R.S.1973 (referring to part 8 of article 1 of title 32, C.R.S. 1973). All property owners however are entitled to seek exclusion of their lands from the district. Sections 32–4·107(2), 32–4–121, C.R. S.1973.

within a district but who do not live in the district, contravenes the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and Art. II, § 25 of the Colorado Constitution.

### A.

 The appellants' challenge to the special district voting scheme under the federal constitution is no longer debatable. The United States Supreme Court's decision affirming the federal district court's dismissal of the appellants' Fourteenth Amendment challenge constitutes a final interpretation of federal constitutional law which is binding upon us. *People v. Berger*, 185 Colo. 85, 521 P.2d 1244 (1974); *American Federation of Labor v. Reilly*, 113 Colo. 90, 155 P.2d 145 (1944). However, this does not terminate our inquiry. Although the equal protection clause of the Fourteenth Amendment creates rights which cannot be restricted or infringed by the constitution or laws of Colorado, we are free to construe the Colorado Constitution to afford greater protections than those recognized by the United States Constitution. *See People v. Paulsen*, Colo., 601 P.2d 634 (1979); *People v. Hoinville*, 191 Colo. 357, 553 P.2d 777 (1976). Indeed, it is our responsibility to consider whether our own state constitution requires more extensive protections than those mandated by the Fourteenth Amendment. *See People v. Marcy*, Colo., 628 P.2d 69 (1981). Even so, we must remain mindful that federal interpretations of federal statutory and constitutional provisions are helpful in construing similar state laws. *See United Bank of Denver National Association v. Shavlik*, 189 Colo. 280, 541 P.2d 317 (1975). The question we must address, therefore, is whether justification exists to extend the guarantee of equal protection of the laws afforded by our state constitution further than that provided under the Fourteenth Amendment to the United States Constitution.

### B.

 Inherent in the due process clause of Art. II, § 25 of the Colorado Constitution is a guarantee of equal protection of the laws. *Heninger v. Charnes*, Colo., 613 P.2d 884 (1980); *People v. Max*, 70 Colo. 100, 198 P. 150 (1921). The standards by which we analyze statutes under that guarantee depend upon the classifications created. Unless the classification scheme "trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage," our constitution requires only that it be rationally related to a legitimate state interest. *Winkler v. Colorado Department of Health*, 193 Colo. 170, 564 P.2d 107 (1977); *Mosgrove v. Town of Federal Heights*, 190 Colo. 1, 543 P.2d 715 (1975).

 With respect to restrictions on the franchise, classifications based upon residency, citizenship or age have never been considered suspect. *See, e. g., Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978); *Kramer v. Union Free School District No. 15*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Skafte v. Rorex*, 191 Colo. 399, 553 P.2d 830 (1976), *appeal dismissed*, 430 U.S. 961, 97 S.Ct. 1638, 52 L.Ed.2d 352 (1976).[8] Nonresidents do not have a fundamental right to vote in elections in this state. *Jarmel v. Putnam*, 179 Colo. 215, 499 P.2d 603 (1972). Indeed, we have held that our legislature has the power to determine "the qualifications of voters in all public and quasi-municipal corporations[9] and all reasonable provisions with reference thereto will be upheld." *People ex rel. Shaklee v. Milan*, 89

---

8. Statutes granting the franchise to some but not all persons otherwise qualified by citizenship, residency and age are subject to close scrutiny. *Kramer v. Union Free School District No. 15, supra.*

 In order to survive an equal protection challenge, such statutes must be necessary to promote a compelling state interest. *Id.*

9. The District is a "governmental subdivision of the State of Colorado and a body corporate with all the powers of a public or quasi-municipal corporation." Section 32-4-107(7), C.R.S. 1973.

Colo. 556, 560, 5 P.2d 249, 251 (1931). The fact that a nonresident owns land in this state does not create a fundamental right to political participation in decisions which affect that land. While nonresident landowners may be enfranchised, *see People ex rel. Cheyenne Soil Erosion District v. Parker*, 118 Colo. 13, 192 P.2d 417 (1948), there is nothing in our constitution that requires they be given voting rights in a political subdivision where they do not live.

Having determined that the special district voting scheme involves no suspect classification and infringes no fundamental right, the appropriate test of its validity is whether it is rationally related to a legitimate state interest. In applying that test, the statutory classification scheme may be invalidated only if no set of facts can reasonably be conceived to justify it. *Johnson v. Division of Employment*, 191 Colo. 38, 550 P.2d 334 (1976); *Mosgrove v. Town of Federal Heights, supra.* Our inquiry proceeds from the familiar axiom that legislatures are presumed to have acted constitutionally. *Id.*

The appellants contend that there is no rational reason for granting district voting rights to Colorado residents who own land but do not reside within the district, while denying electoral participation to district landowners who live out of state. The federal district court found that Colorado residents are more likely to share a common concern regarding urban development, and its effect on this state's natural environment, than are residents of other states. *Millis v. High Drive Water District, supra.* Because the formation and operation of a water district affects this concern the federal court concluded that a rational basis exists for excluding nonresidents from direct political participation in water district matters. There appears to be no reason why the federal court's reasoning would not apply as well in interpreting our state

constitution. Similarly, the creation of adequate water supply and distribution systems and the provision of adequate sewage collection and disposal facilities implicate important public health considerations. *Ruberoid Co. v. North Pecos Water and Sanitation District*, 158 Colo. 498, 408 P.2d 436 (1965). These too are concerns which the legislature rationally might have considered to affect Colorado residents more directly than nonresidents. We can also conceive that the legislature wishes to decrease the chance that nonresidents would control the formation and operation of water districts to the detriment of those who are full-time district residents.[10]

Whether the decision to grant the franchise to residents of Colorado owning property in the district but not residing there, while denying the franchise to owners of such property living outside Colorado, effects the best possible balance of competing interests is not for us to determine. We cannot say that such a decision lacks a rational basis. A classification need not be perfect and is not invalid simply because it may result in some inequality. *Harding v. Industrial Commission*, 183 Colo. 52, 515 P.2d 95 (1973). The voting scheme therefore does not violate the equal protection guarantee of our state constitution. *Johnson v. Division of Employment, supra.*

## II.

Although only perfunctorily addressed in their briefs, the appellants also challenged the Board's approval of the modified service plan as a taking of property without due process of law. They apparently claim that the ad valorem tax burden necessary to finance the proposed water system is confiscatory and will not benefit the appellants, for they use their property only in the summer months. We do not agree with this analysis.

10. The appellants' concern that a few residents, through the voting power, might impose egregious tax burdens on vacation property owners for services which on the whole benefit those property owners very little is not without justi-

fication. On the other hand it seems equally unfair that vacation property owners could stifle the acquisition of water which is truly needed by those living in the district year-around.

A water district is organized not for the improvement of land or to benefit only landowners. Such a district is created to "promote the health, safety, prosperity, security and general welfare" of its inhabitants. Section 32–4–101, C.R.S.1973; *see Ruberoid Co. v. North Pecos Water and Sanitation District, supra.* The statute with respect to creation and operation of water districts is to be liberally construed to effect its purposes. Section 32–4–130, C.R. S.1973. The District's board of directors therefore has the power to levy general ad valorem taxes upon property within the District without according a benefit in proportion to the tax burden imposed. Section 32–4–114, C.R.S.1973; *see Ruberoid Co. v. North Pecos Water and Sanitation District, supra; People ex rel. Rogers v. Letford,* 102 Colo. 284, 79 P.2d 274 (1938); *see generally* B. Novak, *Legal Classifications of Special District Corporate Forms in Colorado,* 45 *Denver L.J.* 347 (1968). The fact that the appellants' property may be taxed according to its value regardless of whether the appellants choose to participate in the proposed water system, therefore, does not have any constitutional significance. The United States Supreme Court has held that the Fourteenth Amendment does not "prohibit unwise taxes, merely because they are unwise, or unfair or burdensome taxes, merely because they are unfair or burdensome." *International Harvester Co. v. Wisconsin Department of Taxation,* 322 U.S. 435, 444, 64 S.Ct. 1060, 1065, 88 L.Ed. 1373, 1381 (1944). The appellants have not shown that either the statutory scheme or the proposed service plan for the District is so arbitrary or burdensome that it constitutes a taking of their property without due process of law. *See Dane v. Jackson,* 256 U.S. 589, 41 S.Ct. 566, 65 L.Ed. 1107 (1921).

Although the due process guarantee may not impose a significant limitation on the District's power to levy ad valorem taxes in order to finance the proposed water system, section 32–1–205, C.R.S.1973, does require that the service plan for the District reflect an ability to provide economical and sufficient service to the area and that the area included within the District have sufficient financial ability to discharge any proposed indebtedness on a reasonable basis. The Board was charged with assessing these criteria when it approved the modified service plan. It is to the validity of that approval which we now turn.

### III.

■ A water district may not provide domestic water to its inhabitants except pursuant to a service plan which has been approved by the Board and, with respect to an original service plan, by the district court. Sections 32–1–202 to 209, C.R.S. 1973. If after the service plan has been approved material modifications are made by the district's board of directors, these must be approved by the board of county commissioners "in substantially the same manner as is provided for the approval of an original service plan . . . ." Section 32–1–209(3), C.R.S.1973.

■ When the District in this case raised the interest rate at which the bonds would be sold, we assume for the purpose of this opinion that the change constituted a material modification and necessitated submission of the modified service plan incorporating that change to the Board for approval. The modified service plan was so submitted, and a public hearing was held on that plan. It is the Board's approval of the modified service plan which the appellants challenge as an abuse of discretion.

As noted in part I, section 32–1–205, C.R. S.1973, sets forth the reasons for which a service plan or modification thereof may be disapproved. For purposes of this challenge subsections (d) and (e) are relevant. Respectively, these allow disapproval of the modified plan if:

> "(d) The proposed special district is incapable of providing economical and sufficient service to the area within its proposed boundaries; or
>
> (e) The area to be included in the proposed district does not have, or will not have, the financial ability to discharge the proposed indebtedness on a reasonable basis;"

The district court noted that the practicability, feasibility, reasonableness and necessity of the modified service plan had been vigorously contested at the hearing before the Board. It found, nevertheless, that there was evidence to support the Board's action.

The primary dispute over the modified plan concerned projections as to how many persons would "tap in" to the proposed water system. It was conceded that a decrease in the income from tap fees and water charges caused by a smaller number of persons utilizing the system would have to be made up by increases in the ad valorem tax burden on all District property, increases in tap fees and water charges to those who were on the system, or a combination of such increases. Witnesses for the District, nevertheless, testified that such a decrease would not render the plan economically unfeasible. Although there was testimony at the hearing that some District landowners would not tap in, there was no proof that a substantial number would not do so.[11]

■ The district court may not substitute its judgment for that of the Board, nor may we. Our function is to determine whether there is any competent evidence to support the Board's decision. *Dolan v. Rust*, 195 Colo. 173, 576 P.2d 560 (1978); *Ford Leasing Development Co. v. Board of County Commissioners*, 186 Colo. 418, 528 P.2d 237 (1974). Upon review of the record we conclude that the district court's finding that competent evidence exists to support the Board's decision is correct.

The judgment of the district court is affirmed.

DUBOFSKY, J., does not participate.