664 P.2d 702 (1983)
John Daniel DAWSON, a Minor, By and Through his Mother and Next Friend, Geraldyne Y. McKELVEY, Plaintiff-Appellant,
v.
PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION, Audrey L. Dawson, Beth LaRue Dawson, and Sarah Marie Dawson, Defendant-Appellees.
No. 81SA187.
Supreme Court of Colorado, En Banc.
May 31, 1983.
*703 Nelson, Hoskin, Groves & Prinster, P.C., John W. Groves, Edward A. Lipton, Grand Junction, for plaintiff-appellant.
J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Ann Sayvetz, Asst. Atty. Gen., Denver, for defendant-appellee Public Employees' Retirement Assn.
George G. Johnson, Jr., Denver, for defendants-appellees, Audrey L. Dawson, Beth LaRue Dawson, and Sarah Marie Dawson.
QUINN, Justice.
John Daniel Dawson, a minor, claiming that his father's death entitles him to an annuity from the survivors' benefit reserve fund of the Public Employees' Retirement Association (PERA), appeals a judgment of the district court affirming a decision of the PERA Retirement Board (Board) denying his claim.[1] The district court concluded that section 24-51-806, C.R.S.1973 (1982 Repl.Vol. 10), precludes payment of an annuity to a dependent child, born during the decedent's marriage to his former wife and not a member of the decedent's immediate household, when the decedent was survived by dependent children living with a surviving spouse. The district court also held that this statutory distinction with respect to dependent children bears a sufficiently rational relationship to a legitimate governmental interest to survive an equal protection challenge under the Fourteenth Amendment to the United States Constitution and Article II, Section 25 of the Colorado Constitution. We affirm the judgment.

I.
Prior to his death on January 30, 1978, John's father, Daniel W. Dawson, was employed as an assistant principal in the Glenwood Springs Roaring Fork School District and was a contributing member of PERA. Dawson was divorced from Geraldyne McKelvey, John's mother, on February 9, 1970. Incorporated into the divorce decree was a stipulation granting Geraldyne legal custody of John, who was then four years old, with reasonable rights of visitation in Dawson. Dawson was ordered to pay child support in the amount of $125 per month, and support payments were timely made up to the date of Dawson's death, when John was twelve years of age. After his divorce from Geraldyne, Dawson married Audrey L. Dawson, with whom he had a child, Sarah Marie Dawson, and also adopted Audrey's daughter, Beth LaRue Dawson.
Following Dawson's death, his widow Audrey and his former wife Geraldyne filed claims with PERA for survivors' annuities, Audrey filing on behalf of herself and her two daughters and Geraldyne on behalf of John. PERA determined that Audrey was eligible for an annuity pursuant to section 24-51-805, C.R.S.1973 (1982 Repl.Vol. 10), which authorizes the payment of an annuity to a widow who has in her care the decedent's unmarried and unemancipated children; it, however, denied Geraldyne's claim on behalf of John by virtue of section 24-51-806, C.R.S.1973 (1982 Repl.Vol. 10), which authorizes an annuity to a dependent child only when there is no annuity payable to a surviving spouse. In effect, PERA concluded that under the statutory scheme the widow and children's annuity payable to Audrey operated to preclude the payment of an annuity to John.
John requested the Board to reverse the denial of his claim, arguing that a statutory construction authorizing the payment of an annuity to children of a subsequent marriage while excluding children of a prior *704 marriage rendered the statutory scheme irrational and violative of equal protection of the laws under the federal and state constitutions. The Board concluded that the statutes afford no discretion in determining annuity eligibility and that the payment of benefits to John was precluded because of Audrey's eligibility for the statutory widow and children's annuity. John, pursuant to section 24-4-106, C.R.S.1973 (1982 Repl.Vol. 10), sought judicial review in the Denver District Court on the basis that either the Board had misconstrued the applicable statutes or that the statutes violated equal protection of the laws. The district court rejected John's claims and this appeal followed.[2]

II.
In our view the Board correctly construed the PERA statutes in denying John's claim. The statutes governing the PERA survivors' benefit reserve fund, sections 24-51-801 to XX-XX-XXX, C.R.S.1973 (1982 Repl.Vol. 10), set forth express legislative priorities among three classes of potentially surviving dependents. The first priority (the widow's annuity) is accorded to the surviving spouse.[3] A widow of a deceased public employee becomes eligible for an annuity under section 24-51-804 when she attains a requisite age, which varies with the length of the decedent's service, or when she is found by the board to be mentally or physically incapacitated from gainful employment.[4] This annuity terminates upon the widow's remarriage. When the widow has in her care an unmarried and unemancipated[5] child of the decedent, she becomes eligible for an annuity under section 24-51-805 (the widow and children's annuity) regardless *705 of her age and regardless of the length of the decedent's service.[6]
The next priority is granted to dependent children. Under section 24-51-806 (the children's annuity), an unmarried and unemancipated child is eligible for an annuity only if "no annuities have been payable under section 24-51-804 or XX-XX-XXX," which are the statutory provisions creating the widow's annuity and the annuity for a widow with dependent children.[7] Section 24-51-806 also provides that the child's annuity terminates upon either of the following events: (1) the qualification of the surviving spouse for the widow's annuity pursuant to section 24-51-804 by reason of age or disability; or (2) the child's adoption, marriage, death, or emancipation, except that a child who is "so mentally or physically incapacitated that he cannot provide for *706 himself after reaching age eighteen" is eligible for an annuity regardless of age.
The last group of potential surviving claimants consists of surviving parents. Section 24-51-807 (the dependent parents' annuity) authorizes the payment of a survivor's annuity to any "parent who was dependent upon [the decedent] for at least fifty percent of his support," when "no annuities have been or will be paid under sections 24-51-804 to XX-XX-XXX ...."[8] The annuity for dependent parents is payable until the remarriage or death of the parent.
As this examination of the legislative system of priorities makes clear, the statutory annuity scheme mandates the payment of survivors' benefits to Audrey to the exclusion of other claimants. Audrey is eligible for the widow and children's annuity under section 24-51-805 because she is a surviving spouse who has in her care the decedent's unemancipated children. The only statutory authorization for payment of an annuity to John is section 24-51-806, which authorizes an annuity only when "no annuities have been payable under section 24-51-804 or XX-XX-XXX." Because an annuity is payable to Audrey under section 24-51-805, no payment may be made under section 24-51-806, and, therefore, there is no statutory authorization for the payment of an annuity to John.
John argues that the statutory language in section 24-51-806, i.e., "no annuities have been payable under section 24-51-804 or XX-XX-XXX," was inserted into this section solely to prevent a double recovery and was not intended to vitiate an annuity to a child not living with the surviving spouse merely because the surviving spouse is also eligible for an annuity. We disagree with this argument. The statutory scheme evidences an overriding legislative intent to make the widow and children's annuity of section 24-51-805 exclusive of other statutory annuities as long as the conditions of eligibility for the widow and children continue to exist.[9] There is no circumstance under which a surviving spouse could receive both the widow's annuity of section 24-51-804 and also claim the children's annuity of section 24-51-806 on behalf of a dependent and unemancipated child.
Similar exclusionary language to that of section 24-51-806 is contained in section 24-51-807, which authorizes the payment of an annuity to qualified dependent parents when "no annuities have been or will be paid under sections 24-51-804 to XX-XX-XXX." This latter language is clearly not necessary to prevent double recovery by parents, who are not eligible for an annuity under any other section. We therefore conclude that the statutory language limiting the children's annuity of section 24-51-806 to situations where "no annuities have been payable under section 24-51-804 or XX-XX-XXX" was not designed to prevent double recovery, but instead was intended to create *707 a statutory ranking of potential classes of claimants.[10]
Legislative intent is the touchstone of statutory interpretation. When the meaning of a statute is plain and unambiguous, a court cannot substitute its opinion as to how the law should read in place of the law already enacted. E.g., People in the Interest of Maddox v. District Court, 198 Colo. 208, 597 P.2d 573 (1979); Civil Service Employees Association v. Love, 167 Colo. 436, 448 P.2d 624 (1968). That the statutory scheme might not be a paradigm of equity is not to say that we can ignore the clear import of the unambiguous statutory language. The legislative intent, as expressed in the statutory scheme for survivors' benefits, is to prohibit the payment of the children's annuity of section 24-51-806 to John as long as the surviving spouse is eligible for the widow's annuity under section 24-51-804 or the widow and children's annuity under section 24-51-805. The district court, therefore, did not err in upholding the Board's construction of the PERA annuity statutes.

III.
John also argues that a construction of the statutory scheme which precludes his receipt of the children's annuity of section 24-51-806 and simultaneously permits the widow and children's annuity for Audrey and the decedent's children violates equal protection of the laws. U.S. Const.Amend. XIV; Colo. Const. Art. II, Sec. 25. We are unpersuaded by his argument.
The first question in resolving an equal protection claim relates to the appropriate standard of judicial scrutiny. When a suspect classification is established or a fundamental right is implicated, a standard of strict judicial scrutiny applies. The government in such a case must establish that the statutory classification is necessarily related to a compelling governmental interest. E.g., San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); People v. Chavez, 629 P.2d 1040 (Colo.1981); Heninger v. Charnes, 200 Colo. 194, 613 P.2d 884 (1980). An intermediate standard of scrutiny has been applied to some classifications, notably illegitimacy and gender. Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). To withstand constitutional challenge under this intermediate standard, a statutory classification must be substantially related to the achievement of important governmental objectives. E.g., Craig v. Boren, supra; R. McG. v. J.W., 200 Colo. 345, 615 P.2d 666 (1980). In the absence of a suspect classification, an infringement upon a fundamental right, or a classification triggering an intermediate standard of scrutiny, a statutory classification will be upheld as long as it has some reasonable basis in fact and bears a reasonable relationship to a legitimate governmental interest. See, e.g., San Antonio School District v. Rodriguez, supra; Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); Heninger v. Charnes, supra; Mosgrove v. Town of Federal Heights, 190 Colo. 1, 543 P.2d 715 (1975).
John first argues that the standard of strict judicial scrutiny should apply in evaluating the PERA survivors' annuity statutes because the statutory preference favoring children living with a subsequent spouse to the exclusion of children living with a divorced spouse infringes upon the public employee's right to marry after a previous divorce and adversely affects the *708 child's right to reside with his natural mother. Putting aside the question of John's standing to raise the fundamental right of his deceased father to marry, see Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), we are left with only a mere suggestion that the statutory scheme somehow creates an adverse incidental effect on that right. Simply because a state statute relates in some indirect way to the incidents of or prerequisites for marriage does not mean that the statute must be subjected to the strict scrutiny standard of review. See Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1977) (although state prohibition against remarriage without court approval where resident already had legal obligation to support other minor children "directly and substantially" interfered with the fundamental right to remarry in violation of equal protection of the law, the Supreme Court expressly noted that "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed"); Califano v. Jobst, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977) (rational basis level of scrutiny applied to equal protection challenge to statutory classification terminating dependent child's social security disability benefits upon marriage to a person not receiving disability benefits but continuing such benefits upon marriage to a person receiving disability benefits, the Court noting that a general rule terminating all benefits upon the beneficiary's marriage "is not rendered invalid simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby"). We do not view the statutory scheme as substantially or directly interfering with the public employee's right to marry.
Nor does the statutory priority accorded to children living with the surviving spouse so affect John's asserted right to live with his natural mother as to trigger a strict scrutiny level of analysis. Although a minor child certainly may express a choice to live with one divorced parent rather than the other, section 14-10-124(1), C.R.S.1973, that right is only to express a preference. The child's choice is not conclusive of the issue of custody. In no sense, therefore, can it be argued that the child's choice as to a custodial parent amounts to a fundamental constitutional right. Moreover, the mere fact that the statutory scheme accords a priority in survivors' benefits to the surviving spouse having the decedent's surviving children in her care is not tantamount, in our view, to an actual impairment of the child's relationship to his natural mother or the living arrangements between these two family members. Accordingly, the appropriate standard of review in this case is the "rational basis standard" of equal protection analysisthat is, whether the statutory classification has some rational basis in fact and is reasonably related to a legitimate governmental interest.
It must be borne in mind that under this relaxed standard of judicial scrutiny there is a presumption of constitutionality, and the burden is on the party attacking the statute to establish its unconstitutionality beyond a reasonable doubt. E.g., Bollier v. People, 635 P.2d 543 (Colo.1981); People in the Interest of C.M., 630 P.2d 593 (Colo.1981); Colorado Auto & Truck Wreckers Association v. Department of Revenue, 618 P.2d 646 (Colo.1980); Harris v. Heckers, 185 Colo. 39, 521 P.2d 766 (1974). Furthermore, with respect to legislative classifications, a statute is not constitutionally suspect simply because distinctions are not made with "mathematical nicety" or because they result "in some inequality." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501-02 (1970). The problems of government are practical ones and often justify, if not require, a rough accommodation of variant interests. See Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).
John argues that there is no rational basis for distinguishing between children of a prior marriage and children of a subsequent marriage in providing for survivors' annuities. In our view, he misconceives the nature of the statutory classification. The statutory scheme does not distinguish between groups of children on the basis of *709 birth during a prior or subsequent marriage, but rather establishes a classification between members of the immediate family unit who are likely to have been in the decedent's immediate household at the time of his or her death and those who were not.[11] Thus, when a surviving spouse is eligible for an annuity pursuant to section 24-51-805 by virtue of having care of the decedent's unemancipated child, it is the surviving spouse as head of the household unit rather than the child who is paid the annuity. This legislative concern for providing for the household unit is also evidenced by the statutory termination of benefits to those who leave the unit, whether by marriage or adoption. See section 24-51-805, C.R.S.1973 (1982 Repl.Vol. 10).
Once it is recognized that the statutory classification distinguishes between surviving family members in the decedent's immediate household and non-household survivors, the rational basis for the distinction becomes clear. Surviving family members who were residing in the decedent's immediate household at the time of his or her death would most likely be dependent upon the decedent for support, not only financial, but also in terms of household and related services. In contrast, dependent children and parents who were not members of the decedent's immediate household more probably than not either would have some degree of independent support or would otherwise stand in a more attenuated dependency relationship with the decedent. We cannot say that there is no reasonable basis in fact for the statutory classification between dependents who are likely members of the decedent's household at death and those who are not.
Nor can we conclude that the statutory distinction lacks a reasonable relationship to a legitimate governmental interest. While the statutes governing the PERA survivors' benefits do not set forth an express legislative purpose, the state's interest in providing the dependents of public employees with some maintenance in the event of the employee's death is quite obvious. This interest, while undeniably a legitimate one, is tempered by a corresponding governmental interest in preserving resources and protecting the fiscal integrity of the survivors' benefit reserve fund. See Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). The establishment of priorities for survivors' benefits according to the degree to which the family member was directly dependent on the decedent reasonably serves the legitimate governmental interest in providing for dependent survivors in a manner consistent with both probable need and fiscal integrity. The PERA annuity statutes, therefore, do not violate equal protection of the laws.
The judgment is affirmed.
NOTES
[1] John Daniel Dawson filed the action "by and through his mother and next friend Geraldyne McKelvey." For the purpose of clarity we will refer to him simply as John.
[2] The appeal was filed directly in this court because John challenges the constitutionality of the statutes governing the distribution of PERA survivors' benefits. See sections 13-4-102(1)(b) and 13-4-110(1)(a), C.R.S.1973.
[3] In this opinion, as in the governing statutes, the term "widow" includes a widower. See section 24-51-803(2), C.R.S.1973 (1982 Repl.Vol. 10).
[4] Section 24-51-804, C.R.S.1973 (1982 Repl.Vol. 10), states:

"Widow's annuity. The widow of a deceased member who qualifies pursuant to the provisions of this part 8 shall receive a survivor annuity equal to fifty percent of the monthly retirement annuity to which said deceased member would have been entitled had he retired the day preceding the date of his death, even though he might not have attained an age to become eligible to retire for superannuation; except that, if the surviving spouse is the only person to whom survivor benefits are or may become payable under this article and is a designated beneficiary, such surviving spouse may elect a lump-sum payment in lieu of monthly benefits pursuant to this section. Such election may be made regardless of the date of death of the member. The member's annuity shall be based on two and one-half percent of his final average salary, as defined in section 24-51-101(2) multiplied by the number of years and any fraction of a year of his credited service not to exceed twenty years and an additional benefit of one percent per year or a proportionate amount thereof for any credited service in excess of twenty years up to a maximum benefit of seventy percent of said final average salary; except that, the survivor annuity shall not be less than twenty-five percent of the member's final average salary. The survivor annuity shall be effective from the later date of either the member's death or the widow's first eligibility therefor. The widow shall be eligible on or after her attainment of age sixty years if said member had less than ten years credited service; or age fifty-five years if said member had less than fifteen but ten years or more of credited service; or age fifty years if said member had fifteen or more years of credited service. If said widow is found by the board to be mentally or physically incapacitated from gainful employment, said annuity shall be paid notwithstanding the age requirements in this section. The survivor annuity provided for in this section shall be in addition to, but shall not be paid concurrently with, the annuities provided in sections 24-51-805 and 24-51-806. No survivor annuity shall be paid to the widow after her remarriage subsequent to said member's death."
[5] In the interest of brevity we use the word "unemancipated" as a substitute for the statutory term "under the age of eighteen or under the age of twenty-three years if such child is found by the board to have been enrolled on a full-time basis within six months subsequent to the date of the member's death in a duly accredited school." See sections 24-51-805 and 24-51-806, C.R.S.1973 (1982 Repl.Vol. 10).
[6] Section 24-51-805, C.R.S.1973 (1982 Repl.Vol. 10), provides as follows:

"Widow and childrenannuity. If the deceased member leaves a widow who has in her care said deceased member's unmarried child under the age of eighteen or under the age of twenty-three years if such child is found by the board to have been enrolled on a full-time basis within six months subsequent to the date of the member's death in a duly accredited school, the widow shall receive an annuity of forty percent of the member's final average salary so long as there is one qualified child or fifty percent of the member's final average salary so long as there are two or more qualified children in the care of said widow. In no case shall the annuity be less than two hundred fifty dollars per month. If the widow dies or remarries while having the care of such qualified child, such child shall receive an annuity of twenty-five percent of the member's final average salary. If there are two such children, the total annuity shall not exceed forty percent of the member's final average salary. If there are three or more such children, the total annuity shall not exceed fifty percent of the member's final average salary, each such child to derive an equal share thereof. In no event shall said annuity payable to such children be less than two hundred fifty dollars per month if there are three or more children or less than one hundred dollars per month to each child if there are less than three children. Any such annuity payable to a child shall terminate upon his adoption, marriage, death, or attainment of age eighteen years. If the retirement board finds said child is enrolled on a full-time basis in a duly accredited school, as required in this section, and has not been adopted or married, the annuity shall terminate upon graduation or upon the child's twenty-third birthday, whichever occurs first. If any child, regardless of age, is found by the board to be so mentally or physically incapacitated that he cannot provide for himself, the annuity shall be paid for the life of such child or until any disability is removed as may be determined by the board or until such child is deceased, married, or adopted. The widow who has in her care such child shall receive the widow's annuity provided for in this section beyond the child's eighteenth birthday in lieu of receiving the widow's benefit under section 24-51-804."
[7] The text of section 24-51-806, C.R.S.1973 (1982 Repl.Vol. 10), is as follows:

"Childrenannuity. If the said deceased member leaves an unmarried child under age eighteen or under age twenty-three if such child is found by the board to have been enrolled on a full-time basis within six months subsequent to the date of the member's death in a duly accredited school, and no annuities have been payable under section 24-51-804 or XX-XX-XXX on account of said member's death, such child shall receive an annuity of twenty-five percent of the deceased member's final average salary. If there are two such children, each child shall receive an annuity of an equal share of forty percent of the deceased member's final average salary. If there are three or more such children, each child shall receive an annuity of an equal share of fifty percent of the deceased member's final average salary. In no event shall the annuity, payable to such children, be less than two hundred fifty dollars per month if there are three or more children or less than one hundred dollars per month to each child if there are less than three children. Any such annuity payable to a child shall terminate upon his adoption, marriage, death, or attainment of age eighteen years. If the retirement board finds said child is enrolled on a full-time basis in a duly accredited school, as required in this section, and has not been adopted or married, the annuity shall terminate upon graduation or the child's twenty-third birthday, whichever occurs first. If any child, regardless of age, is found by the board to be so mentally or physically incapacitated that he cannot provide for himself after reaching age eighteen, the annuity shall be paid for the life of the child or until any disability is removed, as may be determined by the board, or until such child is deceased, married, or adopted. Benefits payable under this section shall terminate upon the qualification of the widow pursuant to section 24-51-804."
[8] Section 24-51-807, C.R.S.1973 (1982 Repl.Vol. 10), states:

"Dependent parentsannuity. If the said deceased member leaves a dependent parent who was dependent upon him for at least fifty percent of his support, and no annuities have been or will be paid under sections 24-51-804 to XX-XX-XXX on account of the death of said member, his dependent parent shall receive an annuity of twenty-five percent of the deceased member's final average salary and, if there are two such dependent parents, an equal share of forty percent of the deceased member's final average salary. In no event shall said annuity be less than one hundred dollars per month to each such parent. Upon the remarriage or death of said parent his annuity shall terminate."
[9] When a widow and children's annuity is payable pursuant to section 24-51-805, the other statutory annuities are expressly precluded. Thus, as developed in the text, the children's annuity under section 24-51-806 is only payable where "no annuities have been payable under section . . . XX-XX-XXX." Similarly, the parents' annuity authorized by section 24-51-807 may only be paid where "no annuities have been or will be paid under sections 24-51-804 to XX-XX-XXX." Finally, the annuity paid to a widow by virtue of age or disability, section 24-51-804, "shall not be paid concurrently with" the annuity provided in section 24-51-805.
[10] The exclusionary language"and no annuities have been payable under section 24-51-804 or XX-XX-XXX"contained in section 24-51-806 will be deleted effective July 1, 1983, by legislative amendment. See An Act Concerning Benefits Under the Public Employees' Retirement Association, H.B. 1256, signed by the Governor on April 28, 1983. The act is applicable, in the case of survivors' benefits, to claims respecting deaths occurring on and after July 1, 1983. Amendments to sections 24-51-804 and 24-51-806 contained in this act also expressly provide that the children's annuity payable under section 24-51-806 takes precedence over the widow's annuity payable under section 24-51-804. We express no opinion on the effect of the amendments to a fact situation similar to that present in this case.
[11] We recognize that surviving dependent parents, who may not have been members of a decedent's immediate household at death, might nevertheless be eligible for an annuity. The dependent parents' annuity, however, is payable only where no widow's, widow and children's, or children's annuities "have been or will be paid under sections 24-51-804 to XX-XX-XXX." Section 24-51-807, C.R.S.1973 (1982 Repl.Vol. 10). The existence of such an annuity therefore only reinforces rather than alters our conception of the statutory scheme as favoring those dependents who most likely were living in the decedent's immediate household at the time of his or her death over those whose dependency upon the decedent was more attenuated.