Birdie L. BRANSON,
Plaintiff-Appellant,

v.

CITY AND COUNTY OF DENVER,
Board of Trustees of the Firemen's
Pension Fund of the City and County
of Denver; and Elvin R. Caldwell, in
his official capacity as Secretary to the
Board of Trustees of the Firemen's
Pension Fund, Defendants-Appellees.

No. 84SA5.

Supreme Court of Colorado,
En Banc.

Sept. 30, 1985.
Rehearing Denied Nov. 4, 1985.

A. Bruce Jones, Bruce W. Sattler and Kathryn E. Miller, Holland & Hart, Denver, for plaintiff-appellant.

Stephen H. Kaplan, Denver City Atty., and Dianne E. Eret, Asst. City Atty., Denver, for defendants-appellees.

DUBOFSKY, Justice.

The plaintiff, Birdie L. Branson, appeals the judgment of the Denver district court affirming the decision of the defendants, the Board of Trustees of the Firemen's Pension Fund for the City and County of Denver (the board), that denied her benefits as the surviving spouse of a disabled Denver firefighter because she was not married to the firefighter at the time he applied for retirement. The district court

held that section 31–30–509, 12 C.R.S. (1977), restricting widows' benefits to widows who married retired firemen before they applied for retirement,[1] did not violate the guarantees of equal protection in the fourteenth amendment to the United States Constitution and in article II, section 25 of the Colorado Constitution.[2] We reverse.

William L. Branson retired from the Denver Fire Department with a disability retirement pension after serving as a fireman for 20 years and nine months. He married Birdie L. Branson on February 7, 1963, four years after his retirement. The Bransons remained married until William Branson's death on April 26, 1976. In December 1982, Birdie Branson applied for benefits from the Firemen's Pension Fund. Her application was denied because section 31–30–509, 12 C.R.S. (1977), which governed the payment of benefits to widows of retired firemen in cities with populations greater than 100,000, only granted benefits to widows who married the firemen before the firemen applied for retirement.[3]

Branson brought suit in Denver district court, appealing the board's decision under C.R.C.P. 106 and requesting declaratory relief under C.R.C.P. 57. The district court affirmed the board's action, holding that the classification under the statute, which prevents only the widows of retired firefighters in cities of over 100,000 from receiving survivors' benefits, did not violate equal protection because marital status at the time of the firefighter's retirement was a rational basis for determining the beneficiaries of firemen's pension funds. Branson appealed that decision to this court.

Article 30 of title 31 of the Colorado Revised Statutes sets forth the statutory scheme for firemen's and policemen's pensions. The parts of article 30 address separately pensions for policemen in general, policemen in cities of over 100,000, firemen in general and firemen in cities of over 100,000. Except for the statute involved in this case, none of the pension provisions restricts benefits for surviving spouses to those who married before the fireman's or policeman's retirement. *See* § 31–30–321(1)(c), 12 C.R.S. (1984 Supp.) (policemen in general); § 31–30–407(2) (firemen in general); § 31–30–415(10) (volunteer firemen); § 31–30–608(2) (policemen in cities of over 100,000). The limitation of benefits for widows of retired firemen in cities over 100,000 is the result of a 1945 amendment that also restricted widows' eligibility to those widows whose marriages were "legally performed by a duly authorized person." Ch. 247, sec. 6, § 456H., 1945 Colo. Sess.Laws 698, 703. The second restric-

---

1. Section 31–30–509 provides in part:

   If any member, officer, or employee of said fire department dies from any cause while in the service or while on the retired list, leaving a surviving widow whom such officer, member, or employee married previous to his application for retirement or previous to April 5, 1945, if he was then on the retired list, such marriage having been legally performed by a duly authorized person, such surviving widow shall be awarded a monthly annuity equal to one-third of the monthly salary of such member, officer, or employee at the time of his death or retirement plus one-third of any increase in salary and longevity or additional pay based on length of service granted to firemen of the rank or comparable successor rank which said member, officer, or employee held in the department on the date of his death or retirement so long as the widow remains unmarried.

   (underlined portion held unconstitutional and invalid in *Carter v. Firemen's Pension Fund*, 634 P.2d 410 (Colo.1981)). In 1977, the General Assembly changed "widow" to "spouse" throughout section 31–30–509.

2. *A guarantee of equal protection is inherent in the due process clause of the Colorado Constitution. Millis v. Board of County Commissioners, 626 P.2d 652 (Colo.1981).*

3. The statutes governing awards of pension benefits to Colorado police officers and firefighters were completely revised in 1979 to establish a statewide fund and board to administer firefighters' and police officers' pension plans. *See* ch. 316, sec. 1, §§ 31–30–1001 to –1016, 1979 Colo.Sess.Laws 1189, 1189–203. A firefighter or police officer may elect to take a reduced pension, providing pension benefits to any beneficiary after his death. §§ 31–30–1006(4) and 31–30–1007(5)(b)(I), 12 C.R.S. (1984 Supp.). The revised statutory scheme does not discriminate between firefighters and police officers, between cities of over and under 100,000, or between spouses who marry before and after the police officer's or firefighter's retirement.

tion, withholding benefits from common law marriage widows, was held unconstitutional by this court in *Carter v. Firemen's Pension Fund,* 634 P.2d 410 (Colo.1981). At issue here is the first restriction, which denies benefits according to the time of marriage rather than the manner of marriage.

■ Branson acknowledges that the standard by which the statute must be examined to determine whether it deprives the plaintiff of equal protection of the laws is the "rational basis" standard. *Carter,* 634 P.2d 410; *Kistler v. Industrial Commission,* 192 Colo. 172, 556 P.2d 895 (1976). The rational basis test is applied in equal protection analysis of statutes that do not create a "suspect classification" or impinge on a fundamental right. *Mosgrove v. Town of Federal Heights,* 190 Colo. 1, 5, 543 P.2d 715, 718 (1975).

■ Under the rational basis test a statutory classification will be upheld if the classification is reasonable and if it bears a rational relationship to legitimate state objectives. *Austin v. Litvak,* 682 P.2d 41, 50 (Colo.1984); *Dawson by and through McKelvey v. P.E.R.A.,* 664 P.2d 702, 707 (Colo.1983). Moreover, under rational basis analysis, a statute is presumed to be constitutional and a plaintiff has the burden of proving its invalidity beyond a reasonable doubt. *Dawson,* 664 P.2d at 708. We conclude that Branson has met the burden established by the rational basis test.

■ The city has advanced several reasons for the distinctions between policemen and firemen (the hazards of firefighting are different from those of police work), between cities of less than 100,000 and cities of over 100,000 (the hazards of firefighting are different in rural areas), and between widows who marry firefighters before and after they retire (widows who marry firefighters before they retire share the daily hazards of their active duty). None of these proposed reasons supports the classification at issue in this case because they do not explain the distinction

drawn by the legislature. For instance, the statute does not affect all widows of retired firemen and policemen in cities of over 100,000 whose marriage occurred after retirement nor does it affect all widows of firemen who married after the firemen retired regardless of the size of the city providing the retirement benefits.

The legitimate governmental goal that the city has proposed to justify the classification scheme is a legislative effort to promote fiscal certainty. The city suggests that the legislature might have been concerned with the financial stability of firemen's pension funds in cities of over 100,-000, and thus limited pension benefits for widows to those whose interest would vest at the firemen's retirement because they were already married to the firemen. Although the suggested legislative preoccupation with the fiscal viability of firemen's pension funds in cities of over 100,000 to the exclusion of other firemen's and policemen's pension funds may seem unwise to us, our role is not to second-guess the legislature, but only to determine whether the statutory classification bears a rational relationship to any legitimate legislative goal.

We conclude that the statutory scheme does not serve the legislative goal of fiscal certainty in a rational way. The statute excludes a surviving widow who married a fireman after he retired, but does not exclude surviving dependent children who were born after the fireman's retirement, § 31–30–510, 12 C.R.S. (1984 Supp.), thus destroying the "fiscal certainty" that the city suggests the legislature meant to achieve. Further, a spouse whose rights were vested might die, and the fireman might remarry, but the new spouse would not receive the benefit of the fireman's vested right to a pension for his surviving spouse. Therefore, the statute does not provide fiscal certainty by excluding benefits for dependents of firemen whose relationship to the firemen arose after the firemen retired.

We can find no rational basis for a benefit scheme that refuses benefits only to

widows of retired firemen in cities of over 100,000 who married firemen after they applied for retirement. *See Carter*, 634 P.2d at 413. The statutory scheme arbitrarily deprives these widows of equal protection of the laws, and therefore violates the guarantees of the fourteenth amendment of the United States Constitution and section 25 of article II of the Colorado Constitution.[4] We hold that the restriction in section 31–30–509 defining a surviving widow as one "whom such officer, member, or employee married previous to his application for retirement or previous to April 5, 1945" is unconstitutional beyond a reasonable doubt and may not be applied.[5]

Judgment reversed and cause remanded.

ROVIRA, J. dissents.

ERICKSON and KIRSHBAUM, JJ., join in the dissent.

ROVIRA, Justice, dissenting:

I respectfully dissent.

As noted in the majority opinion, the facts in this case are not in dispute. Therefore, our only task is to determine whether the statutory provision in question violates Birdie L. Branson's constitutional rights under the fourteenth amendment to the United States Constitution and article II, section 25, of the Colorado Constitution.

I agree with the majority that the standard of review by which section 31–30–509, 12 C.R.S. (1977), must be examined to determine whether the plaintiff has been deprived of equal protection of the law is the "rational basis standard." I also agree that under this standard there is a presumption of constitutionality and the burden is on the plaintiff to establish its unconstitutionality beyond a reasonable doubt. However, I do not agree that Branson has met the burden of showing that the statutory classification is unreasonable and bears no rational relationship to legitimate state objectives. *See* at 340.

Both this court and the United States Supreme Court have often held that a statute is not constitutionally suspect or unreasonable on its face simply because it results in some inequality, or excludes one or more persons from its coverage. *See, e.g., Dawson v. Public Employees' Retirement Association*, 664 P.2d 702, 709 (Colo.1983) (upholding distinction between children of prior marriage and children and surviving spouse of decedent for purposes of eligibility for pension benefits); *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970) (rejecting a claim that Maryland welfare legislation violated the equal protection clause of the fourteenth amendment). In consequence, the proper scope of inquiry under the rational basis test is quite limited: "we ask only whether it is *conceivable* that the classification established by the legislation bears a rational relationship to a permissible governmental purpose." *Torres v. Portillos*, 638 P.2d 274, 276 (Colo.1981) (statute providing for award of attorney's fees to tenant in a landlord-tenant dispute reflected a legitimate legislative purpose) (emphasis supplied). The party challenging a statute bears the entire burden of proving that the classification is without rational basis:

[Where there is no suspect classification and where no fundamental right is implicated], a statutory classification is entitled to the usual presumption of validity and the individual carrying the attack has the burden of showing that it fails to rationally further any legitimate state purpose.

---

**4.** We have interpreted section 25 of article II of the state constitution upon occasion to provide greater protection than the equivalent provisions of the federal constitution. *See City & County of Denver v. Nielson*, 194 Colo. 407, 572 P.2d 484 (1977); *see also Millis v. Board of County Commissioners*, 626 P.2d 652 (Colo. 1981). In the present case, we hold that both the federal and state constitutions forbid the invidious classification made by section 31–30–509.

**5.** Because of our conclusion that the statute is unconstitutional, we need not address Branson's claim that the district court erroneously dismissed a portion of her declaratory judgment action as barred by the statute of limitations.

*Harding v. Industrial Commission,* 183 Colo. 52, 62, 515 P.2d 95, 100 (1973) (upholding the constitutionality of the "better job provision" under the Colorado Employment Security Act). Recently, we held that even a showing that a statutory classification is poorly fitted to the legislature's purpose does not meet the burden of proving unconstitutionality:

> In challenging the constitutionality of a state statute on equal protection grounds, it is insufficient to establish that some effects of the legislation may be counterproductive to the aims of the legislation. Rather, one must demonstrate that no rational relation exists between the goals and the effects of the statute.

*Colorado Department of Social Services v. Board of County Commissioners,* 697 P.2d 1, 15 (Colo.1985) (held that funding provisions of the state social services code are rationally related to the legitimate purposes of the code).

The majority's holding that Branson has met the burden established by the rational basis test, because none of the reasons advanced by Denver fully explain the distinction drawn by the legislature is not supported by any reasoned analysis and is conclusive in nature.

While police work and firefighting are both admittedly risky occupations, the risks produced by these professions differ qualitatively. It therefore is not unreasonable for the legislature to enact different pension provisions for the two occupations.

In addition to facing risks that differ qualitatively from those of other professions, firefighters also face risks that vary from location to location. As the City points out, the high-rise buildings and densely populated neighborhoods found in urban areas produce dangers that are uncommon in rural areas. Exposure to toxic chemicals and the ensuing long-term health risks are also more likely in industrial and commercial centers. Indeed, urban and rural firefighters face such different risks and encounter such different working conditions that it is not unreasonable for the legislature to treat urban and nonurban firefighters in a different manner. In this light, a decision to provide different pension terms is both rational and appropriate.

In the area of firefighter pensions, this court has specifically held that classifications based on the population of a municipal corporation provide a reasonable basis for legislative classification:

> We have held many times that the population of municipal corporations affords a reasonable basis for legislative classification in the passage of statutes thereto . . . .

*Bedwell v. Board of Trustees, Firemen's Pension Fund,* 114 Colo. 475, 478, 166 P.2d 994, 996 (1946) (upholding provisions of the 1903 Fireman's Pension Act relating to firemen in cities of over 100,000 population). In light of this clear precedent, and the unique working conditions experienced in large urban fire departments, I cannot agree with the majority's finding that the differences between police officers and firefighters, and the differences between large and small fire departments, do not provide a rational basis for the legislature's classification scheme.

The majority also passes over the City's argument that, unlike pre-retirement spouses, post-retirement spouses do not share the daily hazards of a firefighter's active duty. At 340. The day-to-day risk of death or permanent disability that is inherent in fighting fires puts a strain on all members of a firefighter's family. The legislature's decision to extend pension benefits to spouses who have shared this risk helps alleviate the resulting stress by assuring the firefighter that his spouse will be provided for in the event of death or disabling injury. But, the act of the legislature in choosing to·extend the pre-retirement spouse's benefits beyond the death of the firefighter does not provide a rationale for extending pension coverage to post-retirement spouses, a class of beneficiaries that has not shared in the firefighter's day-to-day risks.

In its analysis of the governmental goal of fiscal certainty, the majority finds that

the statutory scheme "does not serve the legislative goal of fiscal certainty in a rational way." At 341. In support of this conclusion, it notes that since the statute does not exclude children who were born after the fireman's retirement "fiscal certainty" is thus destroyed. At 341.

This argument proves too much. Clearly, because one class may be benefited, persons of another class cannot legitimately claim that they are denied equal protection because they are not equally benefited:

> [W]ith respect to legislative classifications, a statute is not constitutionally suspect simply because distinctions are not made with "mathematical nicety" or because they result "in some inequality." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970). The problems of government are practical ones and often justify, if not require, a rough accommodation of variant interests. *See Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).

*Dawson v. Public Employees' Retirement Association,* 664 P.2d 702, 708 (Colo.1983) (distinction between children of surviving spouse and decedent's children by former spouse under statutes governing the Public Employee Retirement Association upheld against equal protection challenge).

Moreover, while the fiscal uncertainties posed by post-retirement children and post-retirement spouses may seem similar at first glance, a closer analysis reveals that they may be problems of very different magnitude. Although the common law has long presumed that persons of any age are capable of conceiving children, we know as a practical matter that the vast majority of children are born to parents who are relatively young. Since the risks against which disability pensions provide some measure of protection are cumulative, it seems more likely than not that most firefighters receive disability retirement pensions at an age when they no longer plan to have children. The possibility that retired firefighters will have additional children therefore adds little uncertainty to the pension system. Seen in this light, the legislature's decision not to exclude children born after retirement adds few potential claimants to the pension fund.

Post-retirement marriages, on the other hand, are likely to impose a substantial burden on any pension system. While having children normally occurs in the first few decades of adulthood, divorce, the death of a spouse, and the possibility that a person may not marry until late in life all make marriage a common occurrence at any point in an adult's life. In addition, injuries and other physical disabilities that might prevent a firefighter from conceiving children would not make it impossible for the firefighter to marry. In a large urban fire department, an ability to add post-retirement spouses with no reduction in benefit levels would greatly increase the period over which a firefighter's benefits are disbursed. As the City points out, under the statute before us it was clear that

> when an unmarried firefighter retires, it is known that his benefits will terminate with his death and the continuation of benefits will not be extended for the span of another's lifetime. If this is open to change at any time by the acquisition of a post-retirement spouse, there is less certainty as to what financial liabilities will be incurred.

Indeed, the legislature clearly recognized that extending benefits to post-retirement spouses increased the financial burdens on the pension fund when it modified the pension statute in 1979. Under the amended provisions, a firefighter may now choose to extend pension benefits to a post-retirement spouse *only* by electing to accept reduced pension benefits. Section 31–30–1007(5)(b)(I), 12 C.R.S. (1984 Supp.), *reprinted in* majority opinion, at 339 n.3. The extension of benefits to post-retirement spouses without a corresponding decrease in the amount of the firefighter's periodic pension would increase the City's overall pension liability. Since the applicable statute has no provision for electing reduced payments, an extension of benefits

to post-retirement spouses would indeed reduce fiscal certainty.

Since I believe that the trial court correctly ruled that the plaintiff failed to meet the burden of proving unconstitutionality under the rational basis test and that the justifications asserted by the City provide a reasonable basis for the legislative classification, I would affirm the decision of the district court.

I am authorized to say that Justice ERICKSON and Justice KIRSHBAUM join in this dissent.