No. 24285.

FRANK A. MONTANO *v.* INDUSTRIAL COMMISSION OF THE STATE OF COLORADO (EX-OFFICIO UNEMPLOYMENT COMPENSATION COMMISSION OF COLORADO) AND COLORADO METAL PRODUCTS CORPORATION.

(464 P.2d 518)

Decided February 2, 1970.

William H. Ward, Jr., James Rode, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Robert L. Harris, Assistant, for defendants in error Industrial Commission of Colorado (Ex-Officio Unemployment Compensation Commission of Colorado).

No appearance for defendant in error Colorado Metal Products Corporation.

*In Department.*

Opinion by Mr. Justice Kelley.

Frank A. Montano, the plaintiff below, is here by writ of error to review the decision of the District Court of the City and County of Denver affirming an order of the Industrial Commission of the State of Colorado (the commission), ex-officio the Unemployment Compensation Commission, C.R.S. 1963, 82-1-3(2), denying him unemployment compensation benefits.

The findings of fact of the referee, which the parties agree are supported by the evidence and therefore not subject to review by this court, indicate that Montano was employed for twenty years by the Colorado Metal Products Corporation of Denver, Colorado (the employer), until October 17, 1968, when he left for an authorized one-week vacation which coincided with this state's big game hunting season. When the plaintiff failed to return to work as scheduled, but, instead, remained away for an additional week without permission, the employer terminated his employment.

The series of events that ultimately resulted in Montano being "fired" began on Tuesday, October 22, 1968, when he was still on approved vacation. He stated that on that day he became ill while hunting in the mountains on the western slope. His son drove him into Grand Junction, Colorado, where he remained with relatives until Saturday, October 26, one day past the time he was to return to work. He did not notify his employer of his illness at this time. He returned to Denver on Sunday. He did not go to work on Monday nor did he report his illness to his supervisors. On Tuesday he called the general manager of the company and said he would "be in" on Wednesday morning, but he did not advise the general manager that illness was the reason for his having been absent. On the contrary, the employer maintained the plaintiff told the general manager he was

late in reporting because the hunting party shot a large elk and they had difficulty getting the carcass out of the mountains.

On Wednesday Montano did not go to work and he did not call his supervisor to tell him he would be absent. When he did call on Thursday, he informed the company for the first time that he had been sick and he was going to the doctor. However, the assistant general manager told him it didn't make any difference whether he got a doctor's statement or not because his employment was then terminated. Montano has consistently maintained that he was ill throughout the entire period he was absent from work and that he did not report his illness because: "See, most of the time you tell them, they don't believe you. They think you are drunk or something."

On the basis of the evidence the referee concluded: "* * * that the claimant failed to return to work as scheduled after an authorized vacation, and that that is the primary reason for the claimant's separation from work. It seems entirely reasonable to hold that a claimant who neglects to take those precautions to guard his job which a reasonably prudent person would take, and who is not permitted to work as a consequence thereof, in effect leaves his employment voluntarily. Since the claimant's unemployment was caused by his failure to take reasonable measures to preserve his relations with his employer, he shall be disqualified from receiving benefits."

The law deemed applicable to the circumstances of this case is 1965 Perm.Supp. C.R.S., Section 82-4-8(6) (b) (xix), which provides that no award shall be granted when the unemployment is the result of "Going hunting, engaging in sports, taking unauthorized vacations, or failing to return to work as scheduled after an authorized vacation or other leave of absence unless such failure to return to work was caused by circumstances which would result in a full award under the provisions of this section."

The plaintiff has appealed the referee's decision on the basis of the "saving" provision of the above quoted portion of the act. More specifically he contends that under the provisions of 1965 Perm.Supp. C.R.S., Section 82-4-8 (4) (c) (i) and (ii), he is entitled to a full award. We do not agree and accordingly affirm the judgment of the district court denying the plaintiff unemployment compensation benefits.

The pertinent part of (4) (c) (i), upon which the plaintiff relies, states that a full award will be granted when "The health of the worker is such that he must quit his employment and refrain from working for a period of time, * * * [but] in order to be entitled to a full award must have complied with the following requirements: Informed his employer of the condition of his health * * * prior to quitting his employment; * * *."

However, under the provisions of subsection (4) (c) (ii), prior notification is not required in the case of a sudden injury or illness as long as the employer is notified "at the earliest practicable time after such occurrence."

In order to come under the application of this Full Award section, the plaintiff argues that he "quit" his job for health reasons on the same day he was "fired" and that he notified the employer prior to quitting or at least at the "earliest practicable" time after his illness occurred. The plaintiff does not point out any evidence in the record to support his position. Although the plaintiff has conceded the findings of fact of the referee are binding on him, this particular argument appears to be an attack on the findings of fact.

As we view the record, there are no circumstances which would take the case out of the *No Award* section. Even assuming the plaintiff was the victim of a sudden illness, it is apparent he did not follow the statutory notification requirements. It is undisputed that two days prior to his "quitting" or "firing" he telephoned the employer, but he did not inform the general manager

with whom he talked of the alleged illness that prevented him from reporting to work. Although plaintiff might well have notified the employer earlier, this conversation afforded a *practicable* time and opportunity to advise the employer of his illness.

The following testimony of the plaintiff buttresses the conclusion that the plaintiff did not intend to "quit" his employment, temporarily or permanently, because of his health:

"A. He said, when I called in, he said, 'You are no longer employed in this company so don't bother to bring a doctor's certificate.'

"Q. What did you say?

"A. I told him, I said, 'What seems to be the matter? You can't come to work when you are sick and I am still sick.'"

The plaintiff argues that the decision is wrong as a matter of law because "It is well settled in this State that anyone who loses a job is presumed to be entitled to Unemployment Compensation Benefits," and because a stable employment atmosphere "is not promoted by denying unemployment benefits to an employee with 20 years service * * *." No authority in support of these contentions appears in the plaintiff's brief.

 The public policy relating to unemployment compensation is spelled out in 1965 Perm.Supp. C.R.S., Section 82-4-8(1), in this language:

"In the granting of benefit awards, it is the intent of the general assembly that the department, at all times, be guided by the tenet that unemployment insurance is for the benefit of persons unemployed through no fault of their own; and that each eligible individual who is unemployed through no fault of his own, shall be entitled to receive benefits; and that every person has the right to leave any job for any reason, but that the circumstances of his separation shall be considered in determining the amount of benefits he may draw; and that certain acts of individuals are the direct and proximate

cause of their unemployment and such acts may result in such individuals receiving fifty per cent of full award, a special award, an optional award, or no award."

Applying this legislative declaration to the specific findings of fact by the referee, we conclude that there is no basis for reversing the *No Award* entered by the Commission and affirmed by the trial court.

Conceding that the Unemployment Compensation Act is to be liberally construed to further its remedial and beneficent purposes, *Andersen v. Industrial Commission,* 167 Colo. 281, 447 P.2d 221, it is not the function of "liberal" construction to twist the facts in order to reach a result favorable to an employee. It is most difficult to conceive of any construction which would result in the conclusion that the plaintiff had "informed his employer of the condition of his health * * * prior to quitting his employment," or that he had "notified the employer at the earliest practicable time after such occurrence." 1965 Perm.Supp. C.R.S., Section 82-4-8(4)(c)(i) and (ii).

As indicated above, we hold that, based on the facts and the law, the judgment of the trial court should be and it is affirmed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE HODGES, and MR. JUSTICE GROVES concur.