No. 25970

**Gary C. Harding v. The Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado) and Midwest Steel Company**
(515 P.2d 95)

Decided October 9, 1973.

54

Edward J. Scheunemann, for petitioner.

John P. Moore, Attorney General, John Bush, Deputy, Robert L. Harris, Assistant, for respondent Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado).

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

This is an unemployment compensation case in which Gary G. Harding (claimant) was denied unemployment compensation benefits. The appeal concerns the statutory construction and constitutionality of 1969 Perm. Supp., C.R.S. 1963, 82-4-8(4)(g), *et seq.,* commonly referred to as the "better job" provision of the Colorado Employment Security Act. The controversy centers around the definition of the phrase "better job."

Claimant asserts the statute was misapplied as to him under the facts hereinafter set forth, or, in the alternative, he

contends that the provision violates Article II, Section 25, of the Colorado Constitution and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

■ We conclude that the provision herein involved was properly applied to disqualify claimant from an award of unemployment compensation, and that as so construed it does not violate the constitutional guarantees of due process and equal protection of the laws.

The record of the hearing before the referee of the division of employment reveals that claimant, a steel worker, was employed at Midwest Steel Company from December 14, 1971, through February 7, 1972, where he averaged twenty-five hours of work per week. He voluntarily terminated his employment with Midwest to accept a better job with Pittsburgh Plate Glass Company, where he was to receive the same pay but would work more hours per week. On February 23, 1972, however, he voluntarily terminated the Pittsburgh job to work with Stearns-Roger, Incorporated, a job which he felt would be of longer duration. The claim for unemployment insurance arose out of a three-week period when Stearns-Roger was shut down during a carpenters strike.

The referee made the following pertinent findings and conclusions:

"He quit Pittsburgh Plate Glass Company after approximately two and a half weeks in order to accept another job which he felt would be of longer duration.

"In view of the reduced hours that the claimant was working at Midwest Steel, it is concluded that he had ample reason to quit this job in order to accept employment which would offer more hours of work each week. However, in view of the fact that he worked only two and a half weeks at his new employment, and in view of the fact that the law specifically provides that the job which the claimant accepts must last at least 90 calendar days, the Referee finds that the statutory requirements providing for an Award of benefits have not been met.

"*DECISION:* It is determined that the provisions of Section

82-4-8 (6)(b)(vii) are applicable to this case and No Award is granted. The claimant is disqualified from the receipt of benefits for a period of 13 weeks from February 6, 1972, to May 6, 1972, and his maximum benefits payable are reduced by $1,014.00."

This decision was subsequently affirmed by the Colorado Industrial Commission. Claimant then commenced this appeal, which, because of the constitutional challenge presented, was transferred from the Court of Appeals to this Court pursuant to C.A.R. 50.

I.

The statutory provisions effective January 1, 1972, relevant to this case provide that a worker who voluntarily separates from a job to accept a better job, as defined by the statute, shall be eligible for a full award of benefits in the event of subsequent unemployment by reason of statutorily defined conditions. The specific provisions, the application and construction of which are here challenged, are Sections 82-4-8(4)(g)(i) and (ii), which provide:

"(i) Accepting a better job. In determining whether or not the job accepted is a better job, the division of employment shall consider, but shall not be limited to a consideration of, the rate of pay, the hours of work, and the probable permanency of the job quit as compared to the job accepted, the cost to the worker in getting to the job quit and to the job accepted, the distance from the worker's place of residence to the job accepted in comparison to the distance from the worker's residence to the job quit, and whether or not such worker acted as a reasonably prudent individual would have acted under the same or similar conditions. In addition to the above stated conditions, no job shall be considered better unless it is offered to and accepted by the worker prior to the date of his quitting and meets the following conditions set forth in sub-paragraphs (ii) and (iii) of this paragraph:

"(ii) It does not have a definite termination date of less than one year and it lasts at least ninety calendar days from the first date of employment on the job accepted unless sooner

terminated under conditions of which, in the judgment of the division, the worker had no knowledge at the time he accepted the job and over which he had no control, *but a job shall not be considered better if it lasts less than ninety days due to a lack of work, the absence of said knowledge and control notwithstanding.*"[1]

Section 82-4-8(6)(b)(vii) provides that the worker shall be given no award if he quits to accept other employment which could not be construed as a better job, as defined by the statute.

Claimant challenges the requirement that, in order to qualify as a better job, the new job must last at least ninety days from the first date of employment. No other statutory requirements are in dispute in this case.

Claimant's first argument is that the ninety-day provision only applies when the new and better job lasts less than ninety days "due to lack of work"; therefore, it cannot disqualify him since he did not terminate with Pittsburgh due to lack of work. The lack-of-work provision is no longer pertinent, having been declared unconstitutional in *Spann v. Industrial Commission, supra,* and claimant's argument predicated on this provision has no merit.

■ Next, he contends that the ninety-day provision should be interpreted as applying to the duration of the job rather than the employee's occupancy of the job. The contention ignores the specific language of Section 82-4-8(4)(g)(iv), which provides that the better job "shall be considered to exist only for so long as the worker is actually in employment." *Adams v. Indust. Comm.,* 31 Colo. App. 340, 501 P.2d 1334.

■ Also, claimant argues that the ninety-day provision as applied to him would arbitrarily require the disqualification of other employees who might accept what is clearly a better job but who were subsequently compelled to quit within the ninety-day period for reasons of health, hazardous working

---

[1] The underlined portion of subparagraph (ii) was held to be unconstitutional in *Spann v. Industrial Commission,* 181 Colo. 153, 508 P.2d 385.

conditions, or other factors not within the workers' control. This construction also ignores the clear language of Section 82-4-8(4)(g)(ii), exempting workers from the ninety-day requirement when the new job is terminated "under conditions of which, in the judgment of the division, the worker had no knowledge at the time he accepted the job and over which he had no control."

Ordinarily, words and phrases found in statutes are to be construed according to their familiar and generally accepted meaning. Forced, subtle, strained or unusual interpretation should never be resorted to where the language is plain, its meaning is clear, and no absurdity is involved. *Lidke v. Indus. Comm.,* 159 Colo. 580, 413 P.2d 200; *Jones v. Board,* 119 Colo. 420, 204 P.2d 560. Conceding that the Colorado Employment Security Act is to be liberally construed to further its remedial and beneficient purposes (*Andersen v. Indust. Comm.,* 167 Colo. 281, 447 P.2d 221), it is not the function of liberal construction to twist facts in order to reach a favorable result for an employee. *Montano v. Indust. Comm.,* 171 Colo. 92, 464 P.2d 518. In our view under the plain language of the statute a job must, in order to qualify as a better job, last at least ninety days from the commencement of work unless the employee is unable to complete the ninety days of employment through no fault of his own. *Adams v. Indust. Comm., supra.*

It is the expressed intent of the legislature, as set forth in Section 82-4-8(1) of the Colorado Employment Security Act, that unemployment insurance is for the benefit of persons who become unemployed through no fault of their own. Here, claimant voluntarily quit his employment at Pittsburgh Plate Glass Company prior to the expiration of the ninety-day period and thus became ineligible for unemployment benefits under the statute. We hold that the commission properly applied the statute in ordering that Harding's claim be denied.

II.

Turning now to the question of constitutionality, claimant further contends that the statute as above construed

violates Article II, Section 25, of the Colorado Constitution and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. We view his argument as falling far short of overcoming the presumption of constitutionality that attends the statute. *Bayly Co. v. Depart. of Employ't.*, 155 Colo. 433, 395 P.2d 216.

Claimant contends that the commission's construction of the statute as applied to him results in a determination directly in conflict with the purposes of the act. Further, he argues the ninety-day provision is unrelated to any legitimate state purpose and penalizes persons who try to improve their economic status. Thus, he contends, the statute is arbitrary and capricious, and infringes on his constitutional rights.

We do not agree. It is clear from the declaration of policy (Section 82-1-2) that the Colorado Employment Security Act was enacted to avoid economic insecurity resulting from *involuntary unemployment.* The legislature found that the public good and general welfare required the "compulsory setting aside of unemployment reserves to be used for the benefit of *persons unemployed through no fault of their own."* In *Cottrell v. Teets,* 139 Colo. 558, 342 P.2d 1016, it was observed that the formulation of the statutory scheme of the act to accomplish the declared purposes was strictly a legislative matter subject only to the limitations that the methods adopted not operate unfairly, arbitrarily, oppressively, or unreasonably upon those affected.

"* * * 'When the subject lies within the power of the state, debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome.' * * *" *Cottrell v. Teets, supra.*

See also, *Carmichael v. Southern Coal Co.*, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245.

In *Miller v. Indust. Comm.*, 173 Colo. 476, 480 P.2d 565, where a classification was attacked as an unreasonable discrimination against women workers, this Court stated:

"* * * We note initially that the establishment of reasonable classifications of workers, the grounds upon which compensation may be awarded, the standards of eligibility and disqualification, and the formulae by which distributions are to be made are all matters within the sound discretion of the legislature. * * *"

The act establishes a legislative scheme by which persons may be supported through industry-caused unemployment, from funds created by the taxation of employers. It is implicit from the language of the act that voluntary separations initiated by employees shall render the employees ineligible for unemployment benefits, subject to certain exceptions. Section 82-4-8(4)(a) through (o), The conditions of exception are spelled out in detail. Likewise, subsequent sections of the act enumerate conditions which may dictate in certain circumstances only a partial award of benefits, or may preclude under specified conditions any award whatsoever. Section 82-4-8(6)(b)(vii) specifically precludes an award of benefits when the worker quits his job to accept other employment which could not be construed as a "better job" as previously defined.

Concerning the specific ninety-day employment requirement of the better job exception provision, there is justification for compulsory compliance with this requirement, as it is obviously designed to prevent job-hopping and to secure continuity of employment. We cannot say this is not a legitimate state interest related to the purpose of the act, that of establishing economic stability and security generally. Further, the ninety-day requirement, together with other prescribed better-job conditions, prevents the depletion of the insurance fund account of the past employer who in no way contributed to the job separation of the worker who voluntarily separates under conditions of disqualification. It is not unreasonable to protect an employer's account, established for the express purpose of supporting employees during periods of involuntary unemployment, from diversion to former employees who brought about their unemployment by their voluntary acts. A different rule would be

inequitable, unjust and contrary to the expressed purposes of the act. *Ford Motor Co. v. Abercrombie,* 207 Ga. 464, 62 S.E.2d 209.

In respect to the other aspect of claimant's constitutional attack — that he was denied equal protection of the laws — it has not been demonstrated beyond a reasonable doubt that he was denied equal protection under the statute as construed by the commission. Claimant's argument is simply that the construction of the act creates two arbitrary classifications. The two classifications are those workers who procure a new job which lasts ninety days and who will therefore be compensated should they later become unemployed, as opposed to those workers who take a new job but who are disqualified because they do not remain in the job for the required ninety days, choosing to leave sooner for other work prospects.

As in all equal protection matters, the Court must first determine the standard to be used in assessing the validity or invalidity of the legislation under attack. If the legislation interferes with a right explicitly or implicitly guaranteed by the Constitution, or involves a suspect classification, the state must carry a heavy burden of justification by showing a compelling state interest therefor. *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534; *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600. Here, there is no constitutionally guaranteed right to unemployment benefits. Neither do we find the classification here involved to be suspect. In all other instances, as in the present case, a statutory classification is entitled to the usual presumption of validity and the individual carrying the attack has the burden of showing that it fails to rationally further any legitimate state purpose. *Rodriguez v. San Antonio Independent School District,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; *Developments in the Law of Equal Protection,* 82 Harv. L. Rev. 1065, 1076-1131 (1969). Justice Powell, writing for the majority in *Rodriguez, supra,* stated:

"A century of Supreme Court adjudication under the Equal Protection Clause affirmatively supports the application of the traditional standard of review which requires only that the State's system be shown to bear some rational relationship to a legitimate state purpose." 411 U.S. at 40, 93 S.Ct. at 1300.

We cannot say that the preservation of state funds, the discouragement of job-hopping, and the desire to charge employers only in certain instances for the subsequent unemployment of workers who voluntarily quit their jobs, are not legitimate state aims served by the ninety-day provision. In *Romero v. Hodgson,* 319 F. Supp. 1201 (N.D. Cal. 1970), *aff'd summarily,* 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971), in holding that the exclusion of agricultural labor from the definition of "employment" for purposes of unemployment compensation is rational and does not constitute "invidious discrimination" violative of due process and equal protection, the Court stated:

"But the history cited to us by plaintiffs teaches more than one lesson. The law of equal protection has undergone many changes in the past half century, and most important of these is, perhaps, the standard of deference to the legislature which came out of the turbulent thirties and which remains strong today. While many cases have shown the judiciary highly suspicious of legislative classifications which abridge what are called 'fundamental' or 'constitutional' rights, every presumption has run in favor of upholding laws which deal with *regulation of the economy, the public health, or the collection and disbursement of taxes.* * * *" (Emphasis added.)

*See also, Anaya v. Indust. Comm.,* 182 Colo. 244, 512 P.2d 625; *Miller v. Indust. Comm.,* 173 Colo. 476, 480 P.2d 565; *Slaughter v. Florida Dept. of Commerce, Div. of Lab.,* 252 So.2d 839 (Fla. App. 1971); *Norton v. Department of Employment Security,* 22 Utah 2d 24, 447 P.2d 907; *Caughey v. Employment Security Department,* 81 Wash. 2d 597, 503 P.2d 460.

The results of the application of the statute may

appear harsh to claimant under the facts of this case. This alone will not justify the conclusion that it denies equal protection. As stated in *Dandridge v. Williams, supra:*

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis, it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69-70. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 U.S. 420, 426."

We conclude the classification is not arbitrary or unreasonable, and no invidious discrimination or denial of equal protection has been demonstrated.

Supportive of our conclusions here is *Jones v. Review Board of Indiana Emp. Sec. Div.,* 143 Ind. App. 64, 238 N.E.2d 291 (1968), where a similar better-job statutory provision (*Burns Ind. Stat. Ann.* § 52-1539 (as amend. 1972)) was upheld against attack. *See also, Iowa Code Ann.* § 96.5 (West, 1972).

The order is affirmed.

MR. CHIEF JUSTICE PRINGLE dissents.

MR. JUSTICE KELLEY does not participate.