Dr. Calvin M. Frazier Commissioner of Education 201 East Colfax Avenue Denver, CO 80203
Dear Dr. Frazier:
I am writing in response to your request for a formal legal opinion concerning certain issues raised by 1983 legislative changes to the Public School Finance Act.
QUESTIONS PRESENTED AND CONCLUSIONS
Your inquiry raises two specific questions:
1. Is there any limitation on the number of special elections that a local board can hold during the year, as long as the elections are held on or before the second Tuesday in December and meet the requirements of notice?
Yes, the legislative intent appears to be that a school district could only hold one election this year to increase its authorized revenue base (A.R.B.) for the 1984 budget year. Such a conclusion is also reached by a consideration of the new amendments in light of the already existing statutory language.
2. Is there any limitation on how early in the year a special election to increase the A.R.B. can be held?
The statutory amendments do not address this issue. However, in order to determine the mill levy necessary to raise a certain A.R.B., information is necessary on the total valuation for assessment of all the taxable property within a school district. That information must be turned over to the secretary of the school district board of education by the county assessor no later than October first of each year. Therefore, practically speaking, no election should be held prior to receipt by the school district board of the valuation information.
ANALYSIS
Your questions center around an interpretation of a new subsection to C.R.S. 1973, 22-50-108 which was passed during the most recent legislative session. That subsection, (1.5), states as follows:
 As an alternative to the provisions of subsection (1) of this section, if the board of education of a district is of the opinion that an authorized revenue base in excess of that determined under the provisions of section 22-50-106 (2) (g) is necessary to provide for the needs of the district, the board may submit directly to the registered electors of the district, at a special election, the question of whether the authorized revenue base of the district may be increased, without the necessity of submitting a request for such an increase to the state school district budget review board pursuant to section 22-50-107. In all other respects, the submission of such request at an election shall be in accordance with this section.
Several points need to be emphasized in analyzing this subsection. Initially, it gives local school boards the power to go directly to the voters in a special election to increase the A.R.B. as an alternative to going first to the state school district budget review board and then possibly to the electorate on the A.R.B. increase issue. Essentially, it authorizes a course of action which bypasses the review board. Secondly, the alternative presented to local school boards is for this year only. That is, reference is made in the above-cited subsection to subsection 22-50-106(2)(g) (Supp. 1982) which is concerned with the A.R.B. computations for the 1984 budget year only. Therefore, any conclusions in this letter necessarily are limited to the period of time from issuance to December 31, 1983 as the 1984 budget year for school districts begins on January 1. Finally, subsection (1.5) needs to be read in conjunction with all the other subsections of 22-50-108.
In attempting to interpret a statutory section, a number of general principles apply.
 Ordinarily, words and phrases found in statutes are to be construed according to their familiar and generally accepted meaning. Forced, subtle, strained or unusual interpretation should never be resorted to where the language is plain, its meaning is clear, and no absurdity is involved.
Harding v. Industrial Commission, 183 Colo. 52, 59,515 P.2d 95 (1973).
Also we must
 consider the ends the statute was designed to accomplish and the consequences which would follow from alternative constructions. (citations omitted). If separate clauses in the same statutory scheme may be harmonized by one construction, but would be antagonistic under a different construction, we should adopt that construction which results in harmony rather than that which produces inconsistency. (Citations omitted).
Mooney v. Kuiper, 194 Colo. 477, 479, 573 P.2d 538
(1978). See also U. M. v. District Court,631 P.2d 165, 167 (Colo. 1981).
It is necessary, then, to consider your two questions in view of the terms of the statute itself and the legislative intent in enacting it. The language of the subsection 22-50-108(1.5) and its reference to 22-50-106(2)(g) (Supp. 1982) speak only to a single special election to increase the A.R.B. for the 1984 budget year. Although, the use of singular or plural terms is not conclusive, C.R.S. 1973, 2-4-102 (1980 repl. vol. 1B), it seems clear that in order for the subsection to be read harmoniously with the rest of section 22-50-108 "a special election" must mean only one election. For example, C.R.S. 1973, 22-50-108(4) states that if a majority of the votes cast at the election are in favor of the A.R.B. increase, then the A.R.B. for the ensuing budget year shall be as authorized by the voters. Similarly, if the majority of the votes are against the A.R.B. increase, then the A.R.B. shall be as determined by statute or the review board for the ensuing year. The language in subsection (4) is mandatory. There is no provision that, if the majority of the votes at a special election are against the A.R.B. increase, a school district may hold another special election to try to get the voters to approve an increase. The language, instead, states that the A.R.B. for the ensuing budget year shall be determined according to the results of the special election, regardless of whether or not it is a special election held after submission of a request to the budget review board or held in lieu of a budget review board request.
The wording of the question to be contained on the ballot submitted to the voters at a special election also supports the position that a single special election is all that is permitted by statute. That language, contained in C.R.S. 1973, 22-50-108(1), is as follows:
 "Shall the board of education of (Name of school district) be granted authority to increase the authorized revenue base per pupil of attendance entitlement from the amount of $.........., which is the maximum allowable without approval If the increase is approved the total mill levy for the general fund of the school district for (year) will be .......... mills; if the increase is not approved the total mill levy for the general fund of the school district for (year) will be .......... mills."
The statute requires the school district to inform the voters what the mill levy will be for the following budget year if the A.R.B. increase is approved and what it will be if the increase is not approved. Nowhere does the ballot language suggest that if the school district's request is turned down by the voters, that decision would be binding only until the same or a similar question was approved at another special election held before the beginning of the next budget year. Nor does the statutory language permit school districts to submit alternative questions to the voters on the A.R.B. increase issue.
Further, a review of the tape recordings of the house and senate discussions of 1983 H.B. 1570, which contained the language in question, reveals an apparent understanding by members of the legislature that the special election referred to in subsection (1.5) was to be a one-time proposition for this year only due to the unusually difficult financial restraints under which school districts find themselves operating. Therefore, I conclude upon reviewing the pertinent statutes and legislative history that school districts may hold only one special election pursuant to subsection (1.5).
With regard to your second query as to how early in the year a special election can be held, I will answer it in terms of my conclusion that only one election may be held. The statutes are silent as to how early in the year a special election to increase the A.R.B. must be held. Subsection (2) of C.R.S. 1973, 22-50-108 provides that the election must be held on or before the second Tuesday in December, however. That subsection also provides that notice shall be given of the election beginning two weeks next preceding the election. Additionally, any change in polling places for the special election which would modify their locations from those used in the regular biennial school elections must be designated at least five weeks before the special election. C.R.S. 1973, 22-31-111(1)(a). There is, though, no "front end" timeline specified.
Practically speaking, however, in order to determine what mill levy increase would be needed to accommodate a proposed A.R.B. increase, the district would need to know the total valuation for assessment of all taxable property within the school district. By statute, the county assessor must certify that figure to the secretary of the board of education of the school district no later than October first. C.R.S. 1973, 39-5-128(2) (Supp. 1982). Once a school district had the necessary information, whether it is received on October 1 or before, the special election may be held once all notice requirements are complied with.
SUMMARY
The legislation in question contemplates that a school district may hold one special election on the question of increasing the A.R.B. for the 1984 budget year rather than making such a request to the school district budget review board. This conclusion is supported by a review of applicable case law, companion statutory language, and existing legislative history. Such election must be held prior to the second Tuesday in December and should be held after the school district receives the information necessary to appropriately frame the ballot question for the voters.
Very truly yours,
 DUANE WOODARD Attorney General
ELECTIONS SCHOOL DISTRICTS
C.R.S. 1973, 22-50-108
EDUCATION, DEPT. OF
The 1983 amendments to C.R.S. 1973, 22-50-108 provide that a school district may hold one special election this year on or prior to the second Tuesday in December on the question of increasing the school district's authorized revenue base.