Hamlet J. Barry III Acting Executive Director Department of Natural Resources 1313 Sherman St., Room 718 Denver, CO 80203
Dear Mr. Barry:
I am writing in response to your June 13, 1983 request for a formal legal opinion concerning the purpose and effect of C.R.S. 1973, 18-4-504.5 (1978 repl. vol. 8). Your request discloses that some riparian landowners and law enforcement officials are of the opinion that this statute authorizes private property owners to prohibit rafting or other floating on rivers and streams crossing private land, and subjects river users to criminal trespass prosecutions if they float through private property without first securing the owner's permission. You have requested clarification of the intent and effect of this law with respect to such use of the state's waterways.
QUESTION PRESENTED AND CONCLUSION
Your inquiry raises two related questions:
First, does C.R.S. 1973, 18-4-504.5 (1978 repl. vol. 8), expose persons who float or boat on Colorado rivers and streams to criminal trespass prosecution if they float across private lands, provided that they do not touch the river bank or river bed?
Second, does that provision authorize adjoining landowners to prohibit or otherwise control such floating or boating?
I conclude on both questions that it does not.
 The intent, purpose, and effect of section 18-4-504.5
is to protect adjoining property owners from trespasses to the banks and beds of streams and exempt those who float upon the state's waterways from criminal trespass liability. Since the statute speaks only to criminal trespass, it does not address the question of civil remedies and therefore cannot be viewed as providing authority for private owners of stream banks and beds to prevent such use of the water.
ANALYSIS
In 1977, the general assembly added to the criminal code a definition of "premises" applicable to the second and third degree criminal trespass statutes, C.R.S. 1973, 18-4-503, -504 (1978 repl. vol. 8). 1977 Colo. Sess. Laws 977 § 1, codified at C.R.S. 1973, 18-4-504.5 (1978 repl. vol. 8). Section18-4-504.5 provides:
 As used in sections 18-4-503 and 18-4-504, "premises" means real property, buildings, and other improvements thereon, and the stream banks and beds of any nonnavigable fresh water streams flowing through such real property.
Your inquiry raises the issue whether the inclusion within "premises" of "the stream banks and beds of any nonnavigable fresh water streams" also includes the waters flowing within those streams and/or the air through and under which they pass. In other words, is the air or flowing water itself subject to criminal trespass when it is intruded upon in the process of floating a "craft" (of whatever description), and the passenger(s) thereon do not encroach in any way upon the privately owned real estate through and over which they pass?
A very similar issue was addressed by the Colorado Supreme Court in People v. Emmert, 198 Colo. 137, 597 P.2d 1025
(1979), which involved an appeal of third degree criminal trespass convictions pre-dating passage of section 18-4-504.5. Defendants had floated and fished from rafts over private property on the Colorado River, and had touched the river bed as they crossed that property. At the time of the Emmert
defendants' arrest and conviction, the state had no statutory definition of "premises." Applying the common law rule of "cujus est solum, ejus est usque ad coelum" (he who owns the surface controls everything above it), the court concluded that ownership of the stream beds included ownership of the space above those beds. Therefore, one who "breaks the close" by intruding upon that space commits a trespass. 198 Colo. at 141,597 P.2d at 1027. See also C.R.S. 1973, 41-1-107.
Since the Emmert defendants had admittedly intruded upon the privately owned real estate by touching the river bed, the convictions could have been affirmed on that ground, and the court's discussion of the "ad coelum" doctrine was at least arguably dictum. See, e.g., 198 Colo. at 146,147, 597 P.2d at 1031, 1032 (dissenting opinions of Groves, J., and Carrigan, J.). Assuming, however, that the majority intended its discussion to have the effect of a holding, the question then becomes whether and to what extent section 18-4-504.5 changes the law of trespass with respect to floating on the state's waterways.
In its opinion, the Emmert majority specifically noted that "it is within the competence of the General Assembly to modify rules of common law within constitutional parameters."198 Colo. at 141, 597 P.2d at 1027. This is consistent with both statutory and decisional authorities.
 The common law prevails in this state only by virtue of its adoption into the law of the state by legislative enactment. It may be repealed, without violating our Constitution, by our general assembly at any time it chooses to do so. . . . The legislature may at any time by a legislative act, repeal any part of the common law either expressly or by passage of an act inconsistent therewith on any particular subject.
Colorado State Board of Pharmacy v. Hallett, 88 Colo. 331,335, 296 P. 540, 542 (1931). Accord C.R.S. 1973,2-4-211 (1980); Vogts v. Guerrette, 142 Colo. 527,533-34, 351 P.2d 851, 855 (1960); Shoemaker v. MountainStates Tel. Tel. Co., 38 Colo. App. 321, 323,559 P.2d 721, 723 (1976); see People ex rel.Thomas v. Goddard, 8 Colo. 432, 7 P. 301 (1885).
The legislative definition of "premises" in section 18-4-504.5 is limited to real property, improvements, and stream banks and beds and does not expressly include either waters or airspace. As a general rule, "words and phrases found in statutes are to be construed according to their familiar and generally accepted meaning." Harding v. Industrial Commission, 183 Colo. 52,59, 515 P.2d 95, 98 (1973); accord C.R.S. 1973,2-4-101.[1] In common usage and understanding, "banks and beds" refers to the real property confining and defining a watercourse, but not to the water itself. See 1 W. Hutchins, Water Rights Laws in the Nineteen Western States, 39-42 (1971) (discussing meaning of "beds" and "banks").
Moreover, a familiar rule of statutory construction provides that where the legislature has included certain items in a statute and excluded others, it will be assumed, absent strong evidence to the contrary, that the exclusion was intentional, and the law will not be interpreted to extend to the omitted items.See, e.g., Patrolman's BenevolentAssociation v. New York, 41 N.Y.2d 205, 391 N.Y.S.2d 544,359 N.E.2d 1338 (1976). Had the general assembly intended to include the waters of nonnavigable streams within its definition of "premises," it would have been a simple matter to make that intent manifest. The fact that it did not do so indicates an absence of such an intent. E.g., In re Petition ofU.M. v. District Court, 631 P.2d 165, 167 (Colo. 1981).
The language of section 18-4-504.5 itself, therefore, leads to the conclusion that the definition of "premises" was restricted to real property and does not include either the waters of streams or the airspace above private property. The statute then would repeal "ad coelum" in the criminal trespass context, and would reverse the Emmert result in the situation your question hypothesizes, i.e., where persons float over private property but do not touch the river bed or banks.
This straightforward analysis of the question is, however, complicated in the instant case by a somewhat cryptic reference to section 18-4-504.5 by the Emmert majority, which noted that section 18-4-504.5 had "clarified the meaning of the word `premises'. . . ." Id. at 144, 597 P.2d at 1029. The court apparently found support in the statute for its conclusion "that the waters of this state are not unrestrictedly open to the public." 198 Colo. at 143, 597 P.2d at 1029. Justice Carrigan, in a dissenting opinion, found in the same provision "clear evidence that the legislature did not intend water flowing in a stream to be subject to trespass. . . . Although `stream banks and beds' are included on the list / of real property interests /, water in the streams is excluded from it."Id. at 149, 597 P.2d at 1033.
The majority did not analyze or interpret section 18-4-504.5. Since it was enacted after the Emmert defendants' arrest and conviction, it could not apply to that decision and the court's reference to it was clearly dictum. Nonetheless, that reference is sufficiently unclear that it is appropriate to go beyond the language of the statute itself to discern the legislative intent.[2]
A fundamental rule of statutory construction is "that legislative intent must be ascertained, and given effect if possible."In re Petition of U.M., supra,631 P.2d at 167. "Relevant considerations in arriving at the correct construction include the object sought to be attained and the consequences of a particular construction." Id.; C.R.S. 1973, 2-4-203(1)(a), (e) (1980 repl. vol. 1B). In determining legislative intent, the legislative history of a statute is an important tool. Among the sources of legislative history that have been utilized by Colorado courts are successive drafts of a bill, Haines v. Colorado State PersonnelBoard, 39 Colo. App. 459, 461-62, 566 P.2d 1088, 1090
(1977), and tapes of committee hearings, People v.Luciano, supra, 662 P.2d at 482 n. 4;Americans United for Separation of Church and State Fund,Inc. v. State, 648 P.2d 1072, 1075 n. 1 (Colo. 1982).
An examination of the legislative history of section 18-4-504.5
reveals quite clearly that the intent of the legislature was to protect riparian landowners from trespasses to the privately owned banks and beds of streams, while insuring that those who float or boat upon those streams without intruding on real property would not be liable for a criminal trespass. As originally introduced, the bill (1977 S.B. 360) defined "premises" to include the "channels and beds of any nonnavigable fresh water streams." (Emphasis added.) The word "channels" was deleted and "stream banks" inserted expressly toexclude any possible coverage of the waters of such streams, and to limit the provision to the real property of the banks and beds.[3] This change was made precisely in order to avoid any interpretation that recreational use of the state's waterways for floating and boating would constitute a criminal trespass.
In proposing the amendment substituting "stream banks" for "channels," Senator Kinnie, the bill's primary sponsor, explained:
 Originally the Bill read "channels," Mr. Chairman, and that raises some question to some people that that might mean the water of these streams, and so I am offering the language "stream banks" so that there's no inference to the water.
. . . .
 This . . . will not stop tubing, canoeing or boating on the water, but will give the property owners the help of law enforcement officials against a few people bent on causing trouble. . . .
. . . .
 . . . It simply makes it a criminal trespass to loiter on the stream banks, as the Bill is now, or on the stream beds. If they want to canoe or tube or stay on the water, not bother the properties, why there would be no problem.
Transcript, Senate Committee of the Whole Hearing on Second Reading of S.B. 360, March 31, 1977, at 2, 3, 4. See also
Transcript, Senate Committee Hearing on S.B. 360, March 22, 1977, at 8 ("the intent of the law is just to make sure . . . they stay on the water"), 18 ("we are not addressing the stream itself"), 20 ("if they stay in the boat, they are all right"), 25 ("if the guy was riding on the water and wasn't on the bed of the stream, then he wouldn't be in violation of the law").
This amendment was also discussed by the House Judiciary Committee. The change was explained as follows:
 The interpretation of "channels," as I understand it, by some of the members of the Senate, meant the water; and we are not talking about the water, we are talking about the stream beds, the real property in this case. So that's why it was amended and "stream banks" was put in there rather than "channels," so we don't confuse the issue with water.
. . . .
 . . . This is not to interfere with . . . / the / right to go down the creek or the river.
Transcript, House Judiciary Committee Hearing on Senate Bill 360, April 15, 1977, at 2-3.
In short, the intent of the legislature in enacting section18-4-504.5 was unequivocal: to protect private property owners from trespass to the banks and beds of streams while insuring that the public's use of the waters of those streams for floating would not come within the criminal code's prohibitions.
As was noted above, the supreme court acknowledged inEmmert the authority of the general assembly to alter or repeal the "ad coelum" doctrine and to define "premises" in a way that excludes the waters of the state's streams. It is my conclusion that this is precisely what the general assembly did in section 18-4-504.5. By enacting a statute defining the term "premises" in a manner inconsistent with "ad coelum," the legislature has effectively repealed, for the purposes of the criminal trespass statutes, the common law rule applied by theEmmert court. By limiting the term to real estate, the legislature has insured that neither the state's waterways nor the air through and under which they pass are subject to criminal trespass.
Section 18-4-504.5, therefore, would reverse the Emmert
result in the circumstances your question hypothesizes. The act of floating over privately owned stream beds upon the rivers and streams of the state, without intruding upon banks or beds, does not constitute a trespass within the provisions of the criminal code. The essential element of entering or remaining in or upon premises is missing. C.R.S. 1973, 18-4-503, -504 (1978 repl. vol. 8).
The answer to your second question is inherent in the above discussion. Section 18-4-504.5 decriminalized floating and boating over privately owned stream beds. That statute, therefore, does not authorize either law enforcement officials or the owners of stream beds or of adjoining property to prohibit such activities.
SUMMARY
In conclusion, it is my opinion that one who floats upon the waters of a river or stream over or through private property, without touching the stream banks or beds, does not commit a criminal trespass, because the essential element of entering or remaining in or upon "premises," which includes banks or beds but excludes waters, is missing. Because section 18-4-504.5 speaks to criminal trespass and does not address civil remedies, it cannot be viewed as authorizing the owners of stream banks and beds to prohibit or otherwise control the use for floating of waters passing over their lands.
Very truly yours,
 DUANE WOODARD Attorney General
TRESPASS WATER AND WATERWAYS STATUTORY CONSTRUCTION STATUTES COMMON LAW
C.R.S. 1973, 18-4-504.5
NATURAL RESOURCES DISTRICT ATTORNEYS DEPT.
Persons floating upon the waters of a river or stream, over or through private property, without touching the banks or beds, do not thereby commit a criminal trespass. C.R.S. 1973, 18-4-504.5
addresses only criminal trespass, and therefore does not authorize owners of stream banks and beds to prohibit or otherwise control the use for floating of waters passing over their lands.
[1] This rule applies with special force to criminal statutes, since a citizen has a constitutional right to be adequately informed of what activities the state proscribes. People v.Boyd, 642 P.2d 1, 2 (Colo. 1982); People v. Smith,638 P.2d 1, 3 (Colo. 1981); People v. Bridges, 620 P.2d 1,4 (Colo. 1980). See also C.R.S. 1973, 18-1-102(a) (1978).
[2] The legislative history of section 18-4-504.5 was neither briefed to nor examined by the Emmert court.
[3] As a matter of water law the word "channel" does not commonly include the waters flowing therein; instead, both moving water and a definite channel are, independently, prerequisites to the existence of a stream or watercourse. E.g., 7 R. Clark, Waters and Water Rights 317 (1976); 1 W. Hutchins, Water Rights Laws in the Nineteen Western States 30 (1971); 5 R. Powell, Real Property para. 710 (1981). Use of that word in section 18-4-504.5 might, however, have subjected that law to an interpretation that would have included the space
through which the waters flow as well as the realestate constituting the channel (i.e., the banks and bed), especially in light of the supreme court's decision inPeople v. Emmert, supra.See, e.g., C.R.S. 1973, 30-30-101(1) ("`Channel' means that area of a stream where water normally flows between banks . . ."); 7 R. Clark, supra at 277 (channel is "the groove through which runoff water or the water of a stream normally flows"). See generally In reGerman Ditch and Reservoir Co., 56 Colo. 252, 265-74,139 P. 2, 7-10 (1913). But see Restatement (Second) Torts § 841 Comment d (1979) ("The channel . . . is that strip of land . . . that shows unmistakable signs of the frequent presence of running water"). The general assembly's amendment of the bill, substituting "stream banks and beds" for "channels and beds," precludes such an interpretation. See,e.g., 1 W. Hutchins, supra, at 40-42 (discussing what constitutes beds and banks).