COLONIAL PENN INSURANCE COM-
PANY, a Pennsylvania corporation,
Plaintiff–Appellant,

v.

The COLORADO INSURANCE
GUARANTY ASSOCIATION,
Defendant–Appellee.

No. 89CA1481.

Colorado Court of Appeals,
Div. III.

Sept. 13, 1990.

Wood, Ris & Hames, P.C., Aldo DelPiccolo, Denver, for plaintiff-appellant.

Renner & Rodman, Bradley Ross–Shannon, Denver, for defendant-appellee.

Opinion by Judge NEY.

Plaintiff, Colonial Penn Insurance Co., appeals from the summary judgment entered against it and in favor of defendant, Colorado Insurance Guaranty Association

(Association), on Colonial Penn's claim for declaratory relief.

The sole issue on appeal is whether Colonial Penn's claim against the Association is a "covered claim" as defined under § 10–4–503(4), C.R.S. (1987 Repl. Vol. 4A). We agree with the trial court that it is not and, therefore, affirm.

In November 1984, an automobile/train collision occurred in El Paso County resulting in serious injuries. As a result of the accident, two suits were filed against three railroad companies, the Board of County Commissioners of El Paso County, and the City of Fountain, Colorado.

At the time of the accident, El Paso County had a $500,000 primary comprehensive general liability policy issued by CIGNA Insurance Co. and an excess coverage policy issued by Mission National Insurance Co. Prior to settlement, Mission National offered to pay $250,000 into the settlement fund, but that offer was declined because Mission National would not guarantee payment. Mission National was subsequently declared insolvent and ordered into liquidation.

Colonial Penn became El Paso's excess coverage carrier effective January 1, 1985 —approximately six weeks after the accident.

All claims were later consolidated and ultimately settled on March 2, 1987, for an aggregate payment of $2,000,000. The settling parties executed a document entitled "Release, Settlement, Hold Harmless and Indemnification Agreement and Assignment." That agreement provided, in pertinent part, as follows:

> "[P]ayment by Colonial Penn Insurance Company of the amount of $250,000.00 is made on behalf of the City of Fountain and its insurer, and El Paso County and its insurers, due to the inability of El Paso County's excess insurer, Mission National Insurance Company, to guarantee its offer of $250,000.00, as well as El Paso County and its insurers agreeing to release Colonial Penn Insurance Company from any and all claims that El Paso County may have had pursuant to Colonial Penn coverage...."

Therefore, despite the fact that Colonial Penn was not El Paso's primary nor excess coverage carrier at the time of the accident, it paid the accident victims $1,000,000 —$750,000 on behalf of Fountain as Fountain's excess coverage carrier and $250,000 on behalf of El Paso. CIGNA paid the remaining $1,000,000—$500,000 each for El Paso and Fountain under their primary coverage policies.

On March 31, 1987, Colonial Penn first contacted the Association and demanded reimbursement under the Colorado Insurance Guaranty Association Act (Act), § 10–4–501, et seq., C.R.S. (1987 Repl.Vol. 4A), for the $250,000 it claimed it paid on behalf of El Paso and the Association. At no time prior to the March 2, 1987, settlement of the underlying action had the Association been notified of the lawsuit, the settlement negotiations, or the settlement agreement.

The Association denied Colonial Penn's claim, and Colonial Penn brought this declaratory judgment action to determine if its claim against the insolvent Mission National for subrogation of the $250,000 paid on behalf of Mission National is a "covered claim" under § 10–4–503(4).

At trial, the Association sought summary judgment, claiming that Colonial Penn's claim against the Association is, as a matter of law, not a "covered claim" under § 10–4–503(4). The trial court found that it was undisputed both that Colonial Penn had no legal obligation to pay the victims on behalf of El Paso and that its payment to the victims on behalf of El Paso was voluntarily made. The trial court concluded that § 10–4–503(4) is unambiguous and that Colonial Penn's claim against the Association is not a "covered claim" under that section. Accordingly, the court entered judgment for the Association.

I.

■ Colonial Penn first contends that the trial court erred in concluding that its claim against the Association is not a "covered claim" as defined be § 10–4–503(4)

and in granting summary judgment based on that conclusion. We perceive no error.

### A.

■ If the meaning of a statute is clear and no ambiguity would result, the statute must be interpreted as written without resort to other rules of statutory construction. *In re Estate of David v. Snelson,* 776 P.2d 813 (Colo.1989).

Section 10–4–503(4) provides, in pertinent part, as follows:

" 'Covered claim' means an unpaid claim, including one for unearned premiums, which *arises out of and is within the coverage* and not in excess of the applicable limits of an insurance policy to which this part 5 applies issued by ... an insolvent insurer.... *'Covered claim' does not include any amount due any reinsurer, insurer,* insurance pool, or underwriting association, *as subrogation recoveries or otherwise,* but a claim for any such amount asserted against a person insured under a policy issued by an insurer which has become insolvent which, *if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool, or underwriting association,* would be a covered claim may be filed directly with the receiver or the insolvent insurer; except that in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer." (emphasis added)

The purposes of the Act include avoidance "of excessive delay in payment and financial *loss to claimants or policyholders* because of the insolvency of an insurer." Section 10–4–502, C.R.S. (1987 Repl. Vol. 4A) (emphasis added).

Here, Colonial Penn brought the instant declaratory judgment action seeking subrogation by the Association of the funds expended on behalf of El Paso and its insolvent excess coverage insurer.

We agree with the trial court that § 10–4–503(4) is unambiguous, and we conclude that its application is limited to the coverage of "person[s] insured under a policy issued by an insurer which has become insolvent...." Colonial Penn is not such a person, nor is Colonial Penn's claim one "asserted against a person insured under a policy issued by an [insolvent] insurer."

### B.

■ Colonial Penn urges us to adopt the edict of *Phoenix Insurance Co. v. United States Fire Insurance Co.,* 189 Cal.App.3d 1511, 235 Cal.Rptr. 185 (1987), and to grant it relief "based on the equitable principle of indemnification ... *independent* of any duty" owed by the Association. (emphasis in original) We decline to do so.

In *Phoenix,* the California Insurance Guaranty Association (CalIGA) was substituted as a party in place of the insolvent insurer to fulfill that company's obligation to its insureds. CalIGA contended that the insured's excess coverage policy with Phoenix covered the underlying claim and, consequently, withdrew from the defense of the insured's case. CalIGA thereafter declined to participate in the settlement proceedings, despite the urging of the trial court. After the underlying claim was settled, the settling insurers brought an action seeking a declaration by the court that CalIGA was liable for its share.

The appellate court granted the relief based on CalIGA's refusal "to participate in reasonable good faith efforts to settle with an insured." Applying *Aetna Life & Casualty Co. v. Ford Motor Co.,* 50 Cal. App.3d 49, 122 Cal.Rptr. 852 (1975), the court found that:

"Equitable indemnity ... is not available to a volunteer. It extends to those who pay in performance of a legal duty in order to protect their own rights or interests.... However, one acting in good faith in making payment under a reasonable belief that it is necessary to his protection is entitled to indemnity ... even though it develops that he in fact had no interest to protect...."

Here, Colonial Penn was found by the trial court to have acted as a volunteer in settling the underlying claim for an amount greater than its policy limits. Indeed, in the trial court Colonial Penn neither claimed that it was not acting as a vol-

unteer nor that it made its payment into the settlement fund under a reasonable belief that to do so was necessary to its protection. And, Colonial Penn's mere desire to settle the case directly does not constitute a reasonable belief that payment is necessary to its protection.

Therefore, under the factual findings of the trial court, the *Phoenix* precept is not applicable here.

## II.

■ Colonial Penn next contends that the trial court's construction of the Act violated Colonial Penn's equal protection rights. We disagree.

■ Equal protection is denied only when the law or classification at issue has a "special impact on less than all persons subject to its jurisdiction." *New York City Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979), and thus, in every equal protection case, a threshold determination must be made as to whether persons allegedly subject to disparate treatment by the governmental act or classification are in fact similarly situated. *Board of County Commissioners v. Flickinger,* 687 P.2d 975 (Colo.1984); *City of Colorado Springs v. Weber,* 791 P.2d 1162 (Colo.App.1990).

■ If no such similarity exists, then the equal protection challenge must fail. *Bath v. Department of Revenue,* 758 P.2d 1381 (Colo.1988); *People in Interest of M.C.,* 750 P.2d 69 (Colo.App.1987), *aff'd,* 774 P.2d 857 (Colo.1989).

■ Statutory words and phrases should be given their plain and ordinary meaning, and strained interpretations should be avoided. *Federal Land Bank v. Needham,* 759 P.2d 799 (Colo.App.1988); *see Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973). We will not interpret the Act to mean that which it does not express. *See Burns v. City Council,* 759 P.2d 748 (Colo.App.1988).

Here, Colonial Penn states that the basis of its equal protection claim is as follows:

"By including Colonial Penn as an insurer under the terms of the Act, the District Court in essence extended the definition of insurer to include all insurance companies in all instances regardless of their legal or contractual relationships.

. . . .

Under the District Court's holding here, the mere fact that the insured in this instance happens to be a person or entity conducting business in the insurance arena, would preclude the insured or victim's claim with the Association as not being a covered claim under the Act."

The import of the Act is to avoid losses to those claimants or policyholders whose claims are made under contracts of insurance and whose insurers under those contracts are rendered insolvent. *See* § 10–4–502. The Act, by its plain language, was not intended to protect insurers who have voluntarily paid claims in lieu of insolvent insurers, for such claims, as here, are not brought under policies of insurance, but are instead claims against the Association under the Act. The term "insured" in the Act refers to those "persons," *see* § 10–4–503(8), C.R.S. (1987 Repl.Vol. 4A), who are covered by a policy of insurance with a "member insurer." *See* § 10–4–503(6), C.R.S. (1987 Repl.Vol. 4A). It does not include member insurers themselves seeking subrogation under the Act.

We conclude that Colonial Penn is not an "insured" under the provisions of the Act and, consequently, is not similarly situated with other insureds. Therefore, its equal protection claim must fail.

The judgment of the trial court is affirmed.

TURSI and DUBOFSKY, JJ., concur.