25CA0803 Pope v ICAO 10-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0803
Industrial Claim Appeals Office of the State of Colorado
DD No. 35356-2024

---

Tammy Pope,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Professional
Psychology Association,

Respondents.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE J. JONES
Grove and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

---

Tammy Pope, Pro Se

No Appearance for Respondent Industrial Claim Appeals Office

Hall & Evans, L.L.C., Andrew D. Ringel, Denver, Colorado, for Respondent
Professional Psychology Association

¶ 1    In this unemployment compensation benefits case, Tammy Pope appeals an order disqualifying her from receiving benefits based on her job separation from Correctional Psychology Associates (CPA).  We affirm.

## I.    Background

¶ 2    Pope worked as a Mental Health Clinician at CPA for approximately two years.  After CPA terminated her employment, she applied for benefits with the Division of Unemployment Insurance (the Division), and a deputy for the Division initially determined that she was eligible based on information she had provided.

¶ 3    CPA appealed the deputy's decision and requested a hearing.  After a hearing, at which Pope and two CPA representatives testified, the hearing officer reversed the deputy's decision and disqualified Pope from receiving benefits under section 8-73-108(5)(e)(XX), C.R.S. 2025 (failure to meet established job performance or other defined standards).  Pope appealed to the Industrial Claim Appeals Office (the Panel), which affirmed.

1

## II.    Standard of Review and Legal Principles

¶ 4    We will uphold the Panel's decision unless the findings of fact do not support the decision or the decision is erroneous as a matter of law.  § 8-74-107(6)(c)-(d), C.R.S. 2025.  We review de novo ultimate conclusions of fact and ultimate legal conclusions. *Harbert v. Indus. Claim Appeals Off.*, 2012 COA 23, ¶¶ 8-9.

¶ 5    A worker can receive unemployment benefits only if unemployed through no fault of her own.  *See Debalco Enters., Inc. v. Indus. Claim Appeals Off.*, 32 P.3d 621, 623 (Colo. App. 2001). Determining whether a claimant is at fault for an employment separation requires a case-specific consideration of the totality of the circumstances.  *Morris v. City & County of Denver*, 843 P.2d 76, 79 (Colo. App. 1992).

¶ 6    Section 8-73-108(5)(e)(XX) disqualifies a claimant from receiving benefits if the failure to meet established job performance or other defined standards caused the job separation.  A claimant is properly disqualified under this section if she knew what was expected and failed to satisfactorily perform the job thereafter.  *See, e.g., Pabst v. Indus. Claim Appeals Off.*, 833 P.2d 64, 65 (Colo. App. 1992) (a claimant who knew his employer's concerns about job

2

performance, but failed to improve, was disqualified from receiving benefits).

### III. Evidence Below

¶ 7 The hearing officer found that CPA put Pope on a Performance Improvement Plan (PIP) that established, among other expectations, that she could not remain in the facility beyond 10:00 p.m. The PIP also informed Pope that she was to stop taking notes at 8:00 p.m. and that an "ideal shift" was from 9:00 a.m. to 9:30 p.m. The first page of the PIP included a list of "concerns," including "repeated problems with boundaries, staying later than allowed," and "failure to enter notes on a timely basis." Pope signed the PIP on the morning of September 11, 2024. Then, that evening, Pope sent an email at 11:43 p.m. to her supervisor and several others indicating that she was still working.

¶ 8 CPA's owner testified at the hearing that Pope was not to meet with people after 10:00 p.m. and "she should end her shift by then." Even if Pope wasn't at the facility after 10:00 p.m., she was not to work after that time. Pope "submitted [the email] to an open email thread" rather than addressing issues with her supervisor directly. The email "raised concerns regarding her ability to follow through

on [the PIP,] and the decision was made to terminate" her employment. Pope didn't give any reason why she was working after 10:00 p.m. or why she hadn't sent the email by 8:00 p.m.

¶ 9 Pope testified that she was not in the facility past 10:00 p.m., but admitted that she had sent the email at 11:43 p.m. She contended that she had sent an earlier text with the same information before 8 p.m., however, and therefore complied with the PIP. She also testified that the PIP was "told to her verbally" because she had "blurred vision." According to Pope, the PIP only required that she leave the facility by 10 p.m., and didn't say she had to stop working by that time. She testified that her supervisor told her she was discharged because her email was inappropriate.

¶ 10 CPA's human resources director testified that Pope's email was deemed inappropriate because she sent it to "a very broad group of people, not all of whom should not have been involved in that kind of a discussion." The director also testified that this lack of judgment was "an ongoing concern" and that the "PIP was the final warning."

¶ 11 After hearing the testimony and reviewing the documentary evidence, the hearing officer concluded that because Pope "knew

4

what she was supposed to do and failed to do it," she was at fault for her job separation. The Panel found no error in the hearing officer's determination and affirmed.

## IV. Analysis

¶ 12 On appeal, Pope asserts that the hearing officer did "not correctly cite her defined work expectations" and "did not review" the PIP. She contends that she didn't "actually fail to meet any employer-defined job performance or other standards." She also contends that the hearing officer should have asked more questions to discover whether she had met expectations.

¶ 13 After carefully reviewing the entire record, we, like the Panel, have no basis to conclude that the hearing officer made an error. "It is the hearing officer's responsibility, as trier of fact, to weigh the evidence, assess credibility, resolve conflicts in the evidence, and determine the inferences to be drawn therefrom." *Hoskins v. Indus. Claim Appeals Off.*, 2014 COA 47, ¶ 10.

¶ 14 Additionally, the hearing officer doesn't have a duty to examine a claimant "exhaustively" or "develop the record concerning [the claimant's] version of the events and reasons

surrounding [the] separation." *See Wafford v. Indus. Claim Appeals Off.*, 907 P.2d 741, 743 (Colo. App. 1995).

¶ 15     Contrary to Pope's assertion that the hearing officer didn't consider the PIP, the hearing officer expressly acknowledged that the PIP document appeared in the record. That document spelled out CPA's concerns and expectations, which the hearing officer referenced several times. *See Colo. Real Estate Comm'n v. Bartlett,* 272 P.3d 1099, 1103 (Colo. App. 2011) (an administrative agency is accorded the presumption that it considered the evidence before it). Pope admitted at the hearing that the contents of the PIP had also been relayed to her verbally.

¶ 16     We have considered Pope's arguments, but we conclude that both the hearing officer and the Panel correctly determined that Pope knew what was expected of her and failed to perform the job to her employer's satisfaction. That is all that is required for disqualification from benefits under long-established Colorado law. *See, e.g., Montano v. Indus. Comm'n*, 464 P.2d 518, 519 (1970) (disqualifying a worker from unemployment compensation benefits for failing to take reasonable measures to preserve his employment relationship).

## V. Disposition

¶ 17     The Panel's order is affirmed.

JUDGE GROVE and JUDGE SCHUTZ concur.